# Hunt *versus* The Pennsylvania Railroad Company.

1. A company contracted with a builder to do the work of a building "in a substantial and workmanlike manner," and "in accordance with the plans, specifications and instructions furnished" by the company. *Held*, that the word "instructions" referred to the kind of structure,·&c., relating to planning the building, but the mode of accomplishing the work was left to his own skill and judgment.

2. A rigger, engaged in raising the rafters, was killed by the falling of the rafters. *Held*, in an action by his wife against the company for negligence in causing his death, that it was material for the plaintiff to prove that he was employed by the company.

3. Where one employs a contractor to erect a building, the contractor is the principal of those whom he employs, and it is for them to inquire into his character for skilfulness and carefulness; the employer of the contractor is not a guarantor for his skill and care.

CERTIFICATE from the Court of *Nisi Prius*.

This was an action on the case by Louisa Hunt, for herself and Lydia Hunt, a minor, against The Pennsylvania Railroad Company, for negligence in causing the death of Daniel Hunt, the husband of the plaintiff.

On September 24th 1864, the defendants were erecting a building on Market street west of Fifteenth street, Philadelphia; the building extended back to Filbert street. The deceased was engaged as a rigger in hoisting heavy iron rafters designed for the support of the roof. Hunt's business was to raise the rafters to their places, but he had nothing to do with securing them.

There was evidence that the rafters were not sufficiently secured. While preparing to hoist the sixth rafter, the fifth already up fell and wounded Hunt, amongst others, so that he died in about ten days. There was evidence that the rope to which the first rafter was attached as a guy-rope belonged to the deceased; that it was a bad rope, and had broken; it was attached to the chimney of a lower building.

The company had, by written articles, contracted with Walter Allison to do the work of the building "in accordance with the plans, specifications and instructions furnished" by the company, "or such persons as they may appoint."

Two of the specifications in the articles were—

"5. All materials for the stone and brick work shall be furnished by the contractor except the scaffolding stuff, for which the old lumber may be used.

"6. For the carpenter-work the party of the second part will furnish all lumber, hardware and iron-work; the party of the first part to do only the labour, which is to include the setting of the iron posts, iron rafters and supports for the rafters."

The work was by the terms of the contract "to be done in a substantial and workmanlike manner."

51 475,
163 575

51 475
195 117

51 475
24 SC ³243

51 475
f 211 ³135

[Hunt *v.* Pennsylvania Railroad Co.]

There was much evidence as to the circumstances about the accident, the condition of the building, &c.

The grounds taken by the respective parties will be seen by the points submitted to the judge who tried the cause, viz. :—

By plaintiff:

" 1. That the falling of the roof of defendants' depot as shown by the evidence, by means of which plaintiff's husband was killed, is in itself proof of negligence and unskilfulness on the part of the persons performing that work.

" 2. That it lies upon the defendants, if they are answerable at all, to satisfy the jury that the roof fell from some cause which shows that there was no fault or negligence in the performance of the work.

" 3. That notwithstanding the contract between defendant and Allison, and by reason of its provisions, the defendant is not relieved from the consequences of its negligence in the performance of the work about the roof if the jury believe that there was any such negligence.

" 6. That if the jury believe that the plaintiff's husband was killed by the negligent mode of constructing the roof, or bracing the rafters together, or keeping them in their places, the plaintiff is entitled to recover appropriate damages."

By the defendant :—" 1. That this action being brought in the name of the widow only, when it appears in evidence that there is also living a daughter of the deceased, is not brought by the proper parties, and, since the remedy is statutory, and must be strictly pursued, cannot be maintained.

" 2. That work which was being prosecuted and in the discharge of which the deceased was engaged when he met his death by an accident occurring through and in the performance of that work, being the work of a contractor by whom the deceased was employed, there can be no recovery against the railroad company, defendant in this case.

" 3. That if the death occurred from negligence, it was the negligence of a fellow-servant of the deceased in the course of the employment in which they were both engaged, and therefore there can be no recovery.

" 4. That if the jury believe the breaking of the rope attached to the south side of the rafter in any way or degree contributed to the accident which caused the death of the deceased, and that said rope was either furnished or attached by the deceased, there can be no recovery, since the negligence of the deceased in that event would have contributed to cause the accident."

The court (Thompson, J.) charged :—" If the defendants are liable in this action, it must be on the ground either that they employed incompetent workmen, knowing them to be such, or

[Hunt *v.* Pennsylvania Railroad Co.]

that they might have known them to be such by inquiry, and that it was negligence in not taking proper care in so employing them, and that it was through the negligence, unskilfulness or recklessness of persons so negligently employed, that the life of the plaintiff's husband was lost. It is well settled that where injury occurs to one of a number of servants engaged in a certain business, the employer is not answerable for the injury through the negligence of his fellow-servants. It is only when the master is guilty of culpable negligence in employing unskilful servants that he can be made answerable for such injury.

" Or if the accident arose through and by means of unsuitable or insufficient materials, the rule applies, that if there was negligence in furnishing them, and the injured party is himself entirely blameless, the master or principal may be answerable.

" To enable the plaintiff to recover here, she must show blame on the part of the company in some particular, which contributed to produce the death of which she complains, without contributory negligence on part of the deceased.

" No employee, excepting Mr. Allison, the contractor, has been attempted to be connected with the accident; you have the evidence of the high character he possesses as a workman and builder. Is that true ? If there was no default or negligence on the part of the company in employing him, even if the accident occurred through oversight or negligence on his part, unless you can say they were all wrong in employing him under the view we have given, they are not answerable.

" This results from the law, that the principal is not to respond for an injury to a fellow-servant by another, if due care has been observed in employing the injuring servant. Was Mr. Allison a careful, competent mechanic and builder. If so, that ended the duty in employing him. Were the materials sufficient ? The defective shoe, you will remember, was proved by the plaintiff's own witness, as well as by the defendant's, to have been entirely without influence on the fall of the rafters, but you must be satisfied that this was so also. No other defect in materials is shown.

" It is said that the injury resulted from defective staying or fastening of the rafters; but if that was so, and it was through the mistake of the master workman of the company, still the company is not included in the consequences of it, if they showed due and ordinary care in employing him. I do not remember myself any evidence of any act of his, or even direction, while the rafters were being put up. On the one side of the arsenal buildings there were guys fastened or keyed into the walls of it, on the other there was a rope or cable. It is in evidence that the deceased was the owner of the rope, and assisted in putting it in place to hold the rafters in place, and from lagging, and

[Hunt *v.* Pennsylvania Railroad Co.]

it is further insisted that it was owing to the breaking of this rope that the fatal occurrence ensued, and that this was an insufficient and negligent mode of securing the rafters.

" I entirely concur with the argument of the defendants' counsel, that if this were so, and if defendants were negligent in the performance of the duty (which I have told you belonged to them in employing the builder or any one else, if there were any so employed by them in and about the setting up of these rafters), if the deceased was negligent on his part, and that negligence contributed to the accident, the plaintiff cannot recover.

" Was or was not there negligence in using this rope for the purpose to which it was applied ? Was its use the occasion of the disaster, and did or did not the deceased assist in putting it there, and if it was a negligent and careless and dangerous mode of staying the rafters, and he assisted in it, would it not be negligence on his part as well as others who sanctioned the experiment ? If so, no recovery could be had for the loss of his life, if this contributed to it. This inquiry is all for you."

He further charged as set forth in the first assignment of error. The verdict was for defendants.

The plaintiff assigned for error, that the judge erred : 1. In instructing the jury—" It is also contended, and I am requested to give you my views on the point, that as the contract for doing the work, of which the setting up of the rafters was a part, was to be done by the contractor accordingly ;

" That, unless the company show that they gave proper instructions, and that they were disobeyed by those engaged in the work, they are answerable for neglecting to give such proper instructions ;" I do not agree to this interpretation of the contract. The instructions mentioned in the contract had no relation to the mechanical operations of the builder. He was to furnish the mechanical skill necessary in that department. But it applied rather to the form of the building, changes in it, materials and the like. The mode of doing the work was the builder's—its form, &c., was the employer's. He was to be guided by the plans and instructions as to the kind of work, qualities, materials, shape, form, &c., that being given, specific instructions as to the mechanical operations were not intended by the clause in the agreement. So that there may be no investigation of the alleged negligence of the defendants."

2. In answering plaintiff's first point, saying : " I cannot assent to this point, in view of the facts of the case.—See general charge."

3. In answering plaintiff's second point : " I dissent from this point and instruction refused, for reasons see charge."

4. In answering plaintiff's third point, by saying, " This instruction refused ; for the principle governing, see charge."

5. In answering plaintiff's fourth point, by saying, "This would be so if defendants were guilty of negligence, in employing the party through whose default it occurred. We have stated in the charge already, the ground of defendants' liability, and cannot assent to the point in this form—the ground of liability is as stated in the general charge."

6. In answering in the affirmative the third point of the defendants.

7. In answering in the affirmative the fourth point of the defendants.

*H. T. King* and *G. M. Wharton*, for plaintiff in error.—It is alleged Hunt was a co-servant with Allison. It is insisted, however, by the plaintiff that Allison under his contract was bound by instructions of the company and had no discretion. Besides, part of the materials was to be furnished by the company. There was proof of officers of the company giving instructions. It is submitted—

1. That the sole responsibility of putting up the iron roof was not thrown upon Allison.

2. That the company, by the very terms of the contract, assumed either an active direction of the work, or, if no instructions were given, ratified and adopted the work as performed by Allison.

3. That consequently the negligence of Allison in the performance of the work, was not the mere negligence of a co-employee, by reason of which the plaintiff, another employee, was injured, but that the active intervention of the company, or, which is the same thing, their right of intervention, made them responsible for the negligence.

4. And that as a further consequence, the contract itself was no defence to the action. The sixth specification provided that Allison was to do only labour.

5. That the falling of the roof was in itself proof of negligence. There was no apparent cause for it shown by the evidence.

6. Consequently it lay on the defendants to account for the falling of the roof, otherwise than from fault or negligence in the performance of the work.

Although Allison might be liable, it would not relieve the defendants if the work was done under their plans and instructions: Carson *v.* Godley, 2 Casey 116. The plan was insufficient. The company was bound to exercise due care to have their machinery in a safe condition: Bartonsville C. Co. *v.* Reid, 3 Macq. 266. Hunt had nothing to do with *securing* the rafters. A servant is entitled to expect care and attention from the master, such as his sense of duty ought to command: Ashworth *v.*

[Hunt *v.* Pennsylvania Railroad Co.]

Stanning, 7 Jur. N. S. 467; Clark *v.* Holmes, 7 H. & N. 937; Peterson *v.* Wallace, 1 Macq. 748; Bryden *v.* Stewart, 2 Id. 30. Priestly *v.* Fowler, 3 M. & W. 1, is rather inconsistent with later cases: Mellon *v.* Shaw, 1 B. & S., Q. B. 443. Ryan *v.* Cumberland Valley Railroad Co., 11 Harris 384, is unlike this case, and there Lewis and Knox, Js., dissented: Tarrant *v.* Webb, 18 C. B. 797 (86 E. C. L. R.); Railroad Co. *v.* Stevens, 20 Ohio 435; Walker *v.* Bolling, 22 Ala. 294. In Dixon *v.* Rankin, 14 Sess. Cases 480, Lord Cockburn, speaking of what was presumed to be the English law, as resting upon " the authority of two or three very recent decisions of English courts" (referring to Priestly *v.* Fowler, 3 M. & W. 1; Hutchinson *v.* Railroad Co., 5 Exch. 343; Wigmore *v.* Jay, Id. 354), goes on to say : " The whole course of our practice has proceeded on the assumption that the liability of an employer did not cease, merely because besides employing the wrongdoer he also employed him to whom the wrong was done. I am clear for adhering to our own rule, and to our legal and practical habits. * * *

" I have rarely come upon a principle that seems less reconcilable to general legal reason. I can conceive some reasons for exempting the employer from liability altogether; but not one for exempting him only, when those who act for him injure one of themselves. It rather seems to me that these are the very persons who have the strongest claim upon him for reparation, because they incur damage on his account, and certainly are not understood by our law to come under any engagement to take these risks on themselves :" Sword *v.* Cameron, 1 Sess. Cas.

But it was the defendant's negligence which caused the death; and being the result of their interference or negligence, they are responsible : Roberts *v.* Smith, 2 H. & N. 213; Ormond *v.* Holland, 1 E. B. & E. 102 (96 E. C. L. R.); Senior *v.* Ward, 1 E. & E. 385; 2 Parsons on Cont. 43; Walker *v.* Bolling, 22 Ala. 294. Allison was the general agent of the company at this building, and his neglect is theirs.

But Allison and Hunt were both under the direction of the company : the rafters fell because of the company adopting an insufficient plan, and giving Allison improper instructions.

*Theodore Cuyler*, for defendant in error.—The building was erected under a contract with Allison, who employed Hunt to raise the rafters. The rope to which the rafter was attached was Hunt's, and attached to the rafter by himself: the rope broke and the rafters fell.

The defendants contended that they were not liable, because :—

1st. The negligence of the deceased had perhaps caused, and had certainly contributed to cause, the accident. He owned and attached the rope which broke.

[Hunt v. Pennsylvania Railroad Co.]

2d. Because the work was being done by a contractor of admitted skill and experience, who had exclusive charge of it, and who had employed Hunt to do the work, in performing which he lost his life.

3d. Because the negligence, if any existed, was that of a fellow-servant of the deceased.

The "instructions" from the company, provided for in the contract, meant general instructions and general supervision.

The employment of a competent contractor relieved the company from liability: Laugher v. Pointer, 5 B. & C. 547 ,(11 E. C. L. R.) ; Quarman v. Burnett, 6 Ex. (M. & W.) 506 ; Rapson *v.* Cubitt, 9 M. & W. 710 ; Frazier v. Pennsylvania Railroad Co., 2 Wright 104 ; Yerger *.v.* Warren, 7 Casey 319 ; Skipp v. Eastern ·Counties Railway Co., 9 Ex. (M. H. & G.) 251 ; Logo v. Newbold, 9 Ex. 301 ; Grote v. Chester and Holyhead Railroad Co., 2 Ex. 251 ; Hilliard v. Richardson, 3 Gray 349 ; McCleary v. Kent, 2 Duer 27 ; Weygant v. Harlan, 3 Id. 360 ; Bard v. Yohn, 2 Casey 482 ; Steel v. South-East Railway Co., 32 L. & E. 366.

It seems manifest upon the evidence of the case, that the negligence of the deceased at least contributed to, and perhaps was, the sole cause of the accident which resulted in his death.

The opinion of the court was delivered, February 19th 1866, by
AGNEW, J.—We agree with our brother who tried this cause at Nisi Prius, that the true interpretation of the contract between the railroad company and Allison, the contractor, did not make the company liable for the manner in which he performed his work. The word instructions used in the agreement, referred to the kind of structure, design, materials, combinations and all matters pertaining to the planning of the building to be erected. But as to the mode of accomplishing the work which the contractors undertook, he was left to his own skill and judgment. His contract was to do the work in a substantial and workmanlike manner ; and he was bound, therefore, to bring to its execution the degree of skill and care necessary to perform his covenant.

We may also remark upon the contract as bearing upon the other questions, that the persons employed upon the work were necessarily to be hired by the contractor, who undertook the whole. By its terms, the company were to be involved in the work or employment of hands only, if upon his failure they availed themselves of the option given by the agreement, to treat his contract as forfeited, do the work and charge him with the cost. Now the declaration averred, and it was material to prove, that the deceased was employed by the company ; for the *gravamen* alleged was the duty to provide sound materials and skilful persons in the erection of the building, and their neglect in this respect

1 P. F. SMITH—31

[Hunt *v.* Pennsylvania Railroad Co.]

thereby causing the injury and death of the deceased. But there was not a spark of proof of his employment by them, while the evidence showed that the work of setting up the iron rafters which fell and caused his injury was done by Allison the contractor. Now this fact, coupled with the contract which required this work to be done by him, left no doubt that the deceased was employed by him. But it is sufficient to say, the burthen of the proof to show his employment by the company devolved on the plaintiff, and she gave no evidence of. it.

This brings us to the chief point in the argument of the plaintiff in error, to wit, that the company was bound to furnish sound materials, and a suitable and safe plan of constructing the support of the rafters; and that their fall afforded a presumption that either the materials or the design of the structure was insufficient to support the ponderous iron rafters when hoisted upon their columns. Upon this assumption of the fact, the judge, it is said, was asked to instruct the jury, that the company was answerable for negligence. This has two answers. It was most distinctly proved by the plaintiff, and without conflict of evidence, that the falling of the rafters was owing to their not being properly braced when hoisted. There was not a tittle of evidence to show that either the materials or the supporting structure was at fault. The next answer is, that the points did not call on the judge to instruct upon the inference as to materials and structure, but that the falling was proof of negligence and unskilfulness on the part of the person performing the work; and that they must account for the falling by proof of some cause not arising in negligence or fault in the performance of it. The points, therefore, involved the character of Allison, the contractor, and his mode of performing the work; and are founded on the idea that both he and the deceased were employees under the same principal. But here the proof wholly failed; for the plaintiffs had not proved that Allison and the deceased were employed under the defendants as a common principal, while the defendants had shown that Allison was a contractor, not a mere employee, and that the deceased, if employed by either, must have been employed by Allison. The learned judge refused the plaintiff's points in view of the facts, and in this he did not err. I am not aware that it was ever held in any case, that one who employs a contractor to erect a building, or to do any other mechanical work, becomes a guarantor to all the employees of the contractor for his skill and care in performing the work. In such a case, the contractor is the principal of the persons whom he employs, and, if his character or skilfulness and carefulness are to be ascertained, it is for those he employs to inquire into it. These views render the other assignments of error of no consequence.

Judgment affirmed.