163  561
191  366

163         561
24 SC ¹243

163       561
29 SC  237

# First Presbyterian Congregation, Appellant, *v.* James Smith and Daniel E. Minnahan.

163   561
f222   ² 30

163    561
f40SC¹ 18

*Negligence—Independent contractor—Municipality—Ordinance.*

An independent contractor is liable for an injury caused by the negligent performance of work, if the power of the owner to direct the work is only as to the results of the work, without any control over the manner of performing it; but if the owner retains the right to direct the manner in which the details of the work shall be done, and exercises this right, he is liable.

Where a contractor is employed by a municipality to build a sewer, and he has finished the work, and the sewer has been accepted by the city, the contractor is not liable, at suit of a property owner, for an injury to property caused by a break in the sewer, although the break was due to the negligent construction of the sewer.

In such a case where the municipality has resumed full possession of the street under which the sewer was laid, the fact that a formal ordinance, accepting the whole of the work, was not adopted until after the accident, is immaterial.

Argued March 7, 1894.     Appeal, No. 167, Jan. T., 1893, by plaintiff, from judgment of C. P. Northampton Co., Aug. T., 1891, No. 12, on verdict for defendant.     Before STERRETT, C. J., GREEN, MITCHELL, DEAN and FELL, JJ.     Affirmed.

Trespass for injuries caused to plaintiff's property by a break in a sewer alleged to have been caused by the negligent manner of its construction by defendants.  · Before REEDER, J.

At the ·trial, it appeared that, on Jan. 2, 1891, the street in front of plaintiff's property caved in, and a large quantity of water from a sewer and water main saturated the foundation of plaintiff's property, causing serious injury to it.   The sewer had· been built by defendants and it was claimed that the injury had been caused by the negligent manner of its construction.   Defendants claimed that they were not liable because the sewer in all its details had been constructed under the con--trol and direction of the chief engineer of the city of Easton.

Defendants by their contract, given in evidence, covenanted¡ " to furnish and deliver all the materials and to do and perform; all the work and labor required to be furnished and delivered,

done and performed in and about the construction of certain main and lateral sewers, as authorized by ordinance approved the 22d day of February, A. D. 1890, in strict and entire conformity with the plans on file in the office of the city engineer, and in strict and entire conformity with the specifications."

They further covenanted " that all said materials shall be of the best of their several kinds and qualities, and that all of said work and labor shall be done and performed in the best and most workmanlike manner; and that all of said materials, work and labor shall be subject to the inspection and approval of the city engineer of the city of Easton, and in case any of said materials and work shall be rejected by the said engineer, as defective or unsuitable, then the said materials shall be removed and replaced with other materials, and the said work shall be taken down and done anew to the satisfaction and approval of said engineer, at the cost and expense of the said party of the second part."

The specifications were among others as follows :

" 6. All excavation shall be by open cut from the surface. No tunneling will be allowed, except when written permission is obtained from the engineer.

" 20. The contractor shall have charge of and be responsible for, the entire line of sewers for the construction of which he has contracted, until their completion and acceptance.

" 28. The contractor shall, at his own expense, shore up, protect and make good, as may be necessary, all buildings, walls, fences or other property injured, or liable to be injured during the progress of the work ; and the contractor will be held responsible for all damage which may happen to neighboring property from neglect of this precaution, or from any other cause connected with the prosecution of the work.

" 29. All pipes shall be laid at a certain depth below a grade line stretched near the surface at points given by the engineer.

" 37. The T branches, Ys, lampholes and manholes shall be placed at points indicated by the engineer.

" 38. Special pieces, such as Y branches, curves, Ts, etc., shall be made according to drawings furnished by the engineer.

" 47. Brick sewers shall be constructed according to the plans on file at the city engineer's office, and according to the grades and lines given by the engineer. . . . The sides of the trench

shall, at the contractor's expense, be supported by the proper timber-work, when required by the engineer, to prevent caving.

" 49. After the completion of the brick-work, earth shall be carefully filled in and tamped around the sewer in horizontal layers of not over six inches in thickness, until the filling reaches a height of one foot above the top of the sewer, when the filling shall be carried up in horizontal layers of not over nine inches in thickness, each layer being thoroughly tamped with pavers' rammers, to the surface of the street, or within such distance of the surface as the engineer shall direct. The earth shall be kept sufficiently moist to permit it to be properly compacted, and the surface of the street shall be left in as good condition, by the contractor, as it was previous to the excavation of the trench.

" 50. Whenever ordered by the engineer, in writing, the contractor shall excavate to such a depth below the grade as the engineer may direct, and the excavation shall be brought to grade with such material as shall be ordered by the engineer, the extra work to be paid for upon the estimate of the engineer.

" 51. Catch basins or inlets, with connecting shoots, are to be built where shown on the plan of the work, or at such points as the engineer shall, during the progress of the work, determine and direct. . . .

" 62. The engineer shall have the right to make alterations of the line, plan, form or quantity of the work herein contemplated, either before or after the commencement of the work. . . .

" 63. If any person employed by the contractor on the work shall appear to the engineer to be incompetent or disorderly, he shall, on the requisition of the latter, be immediately discharged and such person shall not be again employed upon the work without the permission of the said engineer.

" 71. And the said contractor hereby expressly binds himself to indemnify and save harmless the city of Easton from all suits or actions of every name and description brought against the said city for, or on account of, any injuries or damages received or sustained by any party or parties by or from the said party of the second part or his servants or agents in the construction of said work, or by or in consequence of any negligence in guarding the same, or any improper materials used in its construction, or by or on account of any act or omission of the said party of the second part or his agents.

"73. In consideration of the completion by the said party of the second part, of all work embraced in this contract, in conformity with the specifications and stipulations herein contained and in strict accordance with the instructions of the engineer, the city of Easton, party of the first part, hereby agrees to pay to the said party of the second part the prices named in the proposal, which is hereto annexed, and which is hereby made a part of this contract."

Under objection and exception, the court permitted A. J. Cooper, the city engineer, to testify : " Q. Now, Mr. Cooper, please state whether you gave any instructions to Smith & Minnahan, who had charge of this construction, as to how the earth should be filled in beginning at a point three feet above the archway of the brick sewer—how were they to put up the earth, and what was done, at the Presbyterian Church? A. Do you want the special instructions right at the Church? Q. How were they to put in the earth, with reference to tamping and puddling—putting in the water, or dumping the earth? A. My instructions were general all over the street. That covered the Presbyterian Church. My instructions there were that they should put in the ground and thoroughly puddle. Q. Were your instructions that they should tamp it at a point three feet above the archway of the sewer? A. I told them they should puddle it; they couldn't tamp it. They should puddle it. I told them they could puddle it. Q. You have already stated what directions you gave about the tamping up to a point three feet above the brick archway. Did you give directions, and, if so, what were they, about the rest of the work, from there on up? A. From that point up it was to be thoroughly puddled to the surface of the street." [20]

Under objection and exception, James Smith, one of the defendants, testified: " Q. State whether or not you received any directions from the city engineer as to the balance of the work after you reached this point three feet above the sewer? A. The whole work was described. The filling afterwards was done by the direction of the city engineer. Q. From the point up three feet above the archway of the sewer? A. We were authorized to fill that as the ground was excavated by the buckets, and keeping it wet all the time." [25]

The court charged in part as follows:

" [If you come to the conclusion that it was the defendants' negligence, then, before you can find a verdict in favor of the plaintiff, you will have to proceed to another consideration, was what they did negligently, authorized by the contract?— and it is only in this consideration that the contract becomes of any importance at all in determining your verdict. That is to say, although the work might have been negligently done by these defendants, if the work was done in accordance with the terms of the contract, in accordance with the directions of those who had a right to direct them, then, although the work may have been negligently done, yet there can be no liability on the part of these defendants.] [32]

" [In order to determine this, you will have to consider the terms of the contract—what was the negligence of the defendants. That is the first question of fact which you will have to determine. Was it the way in which the sheet-piling was left in the sewer? If it was, then you will have to turn to the contract to see whether they were authorized to leave the sheet-piling in the sewer. The contract specifies that ' the sides of the trench shall, at the contractor's expense, be supported by a proper timber-work, when required by the engineer, to prevent caving.' Therefore if they were required by the engineer to put in this timber-work to prevent caving, and if timber-work so put in was put in according to the directions of the engineer (and so he testifies), then there can be no recovery against the defendants because of the putting in of the timber-work in that drain. If the negligence you find was not in the construction of the timber-work that supports the sides of the drain, but was the leaving of it in the trench when they filled it up, you will then consider whether this act was the independent act of the contractors, or whether they were directed to do that which they did, and which you find was negligence, by a person having the authority to do it.

" The contract provides that ' all work shall be done under the direction and supervision of the city engineer.' There is no provision in the contract which forbids the leaving of the sheet-piling in the drain. There is a provision in the contract as to the method in which the drain shall be filled up. The city engineer testifies that he directed that the contractors should leave the timber-work, which was put into the trench,

to support the sides of the trench, in, when they filled it up, and that it was done in obedience to this order, as extra work, for which the city paid.

" If that is true, then, although the leaving of the sheet-piling in this drain may have occasioned the trouble, yet the contractors are relieved from any liability because of that.] [33]

" [Is the negligence which you find caused the destruction, the method of filling up? If it was you will have to return to the contract for the purpose of determining whether that was done by the contractors as an independent act, or in contravention of the terms of the contract, or if it was lawfully done under the lawful direction of those having authority to direct them. I find in the contract a provision in regard to the way in which the drain or trench shall be refilled. It is that ' after the completion of the brick-work (that is the brick sewer) the earth shall be carefully filled in, packed around the sewer in horizontal layers of no more than six inches in thickness, until the filling reaches the height of one foot above the top of the sewer.' Was that done? The testimony of a number of witnesses is that it was done under the direction and supervision of the city engineer, according to this provision of this contract; if this was done, and if this was not a proper method, then the city, nevertheless, would be liable, and if the contractors did the work, in accordance with this provision of the contract, they would be relieved from any liability.

" The provision then goes on to say, ' When the filling shall be carried up in horizontal layers of *not over nine inches in* thickness, each layer being thoroughly tamped with pavers' rammers to the surface of the street, or within such distance of the surface as the city engineer shall direct.'

" The city engineer says this was done; that the tamping was carried on to the top of the sewer, and two feet above that, I think. At any rate, some of the witnesses say it was carried three feet above the top of the sewer, and others say two feet, and others say eighteen inches, and the city engineer, by the authority vested in him, directed that the tamping should cease, and that they should puddle to the surface of the street.

" If you believe this testimony, even though you may believe this was a negligent method of filling, yet, if you believe this was done by them in accordance with the direction of the city

engineer, he acting under the provision of the contract, then the defendants would be relieved from liability.] [34] . . . .

" [If you find, gentlemen of the jury, in the consideration of this case, first, that no negligent act of the defendants in the filling up of this drain in the construction of the sewer led to this injury, your verdict will be for the defendants.   If you find that it was their negligent act, then you will consider whether it was their negligent act authorized by the contract, or authorized by those having the authority to direct them under the contract.   If you find that it was something done outside of the contract, not by the lawful direction of any one having the right to direct them, but that it was a negligent act committed by themselves, then you will consider, before you render a verdict for the plaintiffs, whether it was the proximate or whether it was the remote cause of the injury.] [35]

" [What caused this damage?   Did the water pipe leading into the Meixsell property rust through and commence leaking, and did the escape of that water running into this new-made drain settle and carry away the earth so as to undermine the Lehigh Water Company's water pipe, causing the earth to cave, and the caving of the earth broke the water main so that a large quantity of water was discharged from the pipe, washing the earth away so that the foundation of the church settled in the manner described; or was it the negligent construction of the drain itself which has led to the breaking of the water pipe and the escape of the water?   If the first cause was the breaking of the Meixsell water pipe, and the breaking of the Meixsell water pipe was because of its having been so old and so long in use that it rusted through, and the construction of the drain had nothing to do with its breaking, and then it ran over into the drain (even though the drain had been improperly filled up,) and it caved, there would be no liability on the part of the defendants, and it will not do to say that the Water Company's neglect or the defendants' neglect, one or the other, must have led to this injury, and that therefore one or the other must be liable to the church; that would be in contravention of your duty. . You must say which one caused this injury; the way in which it was caused; and, after having said that, although you may find that the negligence of the other may have contributed to the injury, yet the contribution to the injury would not relieve the other from liability.] " [36]

" [But you must determine, also, gentlemen, in determining where the liability exists, which was the proximate and which was the remote cause of the injury. If the first disturbance there, was the caving in of the drain, and that caving in of the drain led to the breaking of the pipe, and the work was negligently constructed, and not in accordance with the contract, then there would be liability on the part of these defendants; but if the first disturbance under the surface of the earth was the rusting through of the service pipe at the Meixsell property, and the water running from that pipe into the drain led to the caving in of the drain because it was improperly filled up, and that the caving in of the drain caused this accident, then, there would be no liability on the part of these defendants.] " [37]

Plaintiff's point was among others as follows :

" 7. If the jury find the following facts, that the sewer trench immediately in front of the Presbyterian Church was improperly, negligently and defectively filled up by the defendants, so as not to bring the ground in the trench to the same condition as near as practicable, according to the best and most approved methods, as it was before the trench was excavated, so as to prevent the settling of the ground, and if in consequence of such improper, negligent and defective filling up and the settling of the ground in the sewer trench, the water service pipe of the Presbyterian Church broke off, at the place where it entered the main water pipe, and if, by reason of said break, the water flowing from said main water pipe washed out and undermined said main water pipe, and caused said main water pipe to break, and the volume of water flowing therefrom undermined the foundation of the said First Presbyterian Church and caused plaintiff's injury, then such improper, negligent and defective filling up of said sewer trench was the proximate cause of said injury, and the verdict must be for the plaintiff. *Answer :* That point I affirm with the qualification that the meaning of the word 'improper' must be extended so as to cover any work done not in accordance with the provisions of the contract, or not done in accordance with the directions of those having the lawful authority to direct them, and by what I have already said in my charge." [30]

Verdict and judgment for defendants.    Plaintiff appealed.

*Errors assigned* were among others (20, 25) rulings; (30, 32–37) instructions; quoting bills of exceptions, evidence and instructions.

*O. H. Meyers* and *R. I. Jones, R. C. Stewart* with them, for appellant.—A municipal corporation is not responsible for an injury occasioned by the negligence of the contractors with it, or of their agents and servants; the remedy for the injury is against the contractors alone.   This is the rule where the power of supervision is as to the result of the work without any control over the manner of performing it: Painter v. Mayor of Pittsburg, 46 Pa. 213; Willard v. Tatham, 57 Pa. 375; Reed v. Allegheny, 79 Pa. 300; Harrison v. Collins, 86 Pa. 153; Erie v. Caulkins, 85 Pa. 247; Edmundson v. R. R., 111 Pa. 316; School District, etc., v. Fuess, 98 Pa. 601; Susquehanna Depot v. Simmons, 112 Pa. 384; Hunt v. R. R., 51 Pa. 475; Harrison v. Collins, 86 Pa. 153; Smith v. Simmons, 103 Pa. 36; Gas Co. v. Lynch, 118 Pa. 373.

Where one suffers injury through the concurrent negligence of two or more persons, they are jointly liable, and may be proceeded against for the damages sustained, either jointly or severally at the option of the party injured: Lockhart v. Lichtenthaler, 46 Pa. 151; Phila. & Reading R. R. v. Boyer, 97 Pa. 91; Carlisle Boro. v. Brisbane, 113 Pa. 550; Bunting v. Hogsett, 139 Pa. 376; Dean v. R. R., 129 Pa. 414; Burrell Township v. Uncapher, 117 Pa. 353; Koelsch v. Phila. Co., 152 Pa. 356; Gates v. R. R., 150 Pa. 50.

Where the court below neglects to explain to the jury the precise question at issue and calls attention to the evidence of one side only, the judgment will be reversed, for such is not an adequate presentation of the case to the jury: Herstine v. R. R., 153 Pa. 204; Reber v. Herring, 115 Pa. 599; Canal Co. v. Harris, 101 Pa. 80; Gehman v. Erdman, 105 Pa. 371; Goerson v. Com., 99 Pa. 388; Garret v. Gouter, 42 Pa. 143; Reichenbach v. Ruddach, 127 Pa. 564.

*W. S. Kirkpatrick, Henry W. Scott* with him, for appellee.—If defendants had moved for a compulsory nonsuit because there was no proof of negligence, the authorities would have justified such action: Ballard v. R. R., 126 Pa. 141; Huey v. Gahlenbeck, 121 Pa. 238.

Defendants were not required to use the best methods known to the scientific world ; the measure of their responsibility was to use ordinary care in the selection of material and employment of methods for construction that were reasonably safe : Payne v. Reese, 150 Pa. 301.

Plaintiff must prove the negligence, and also that this was the efficient cause of their damage ; for the latter proposition there is nothing but conjecture. If upon the statement of facts in their record contained, although negligence is assumed, yet if it were doubtful whether that negligence was the cause, plaintiff could not recover : Cotton v. Wood, 98 E. C. L. 568 ; Marble v. Worcester, 4 Gray, 395 ; Clark v. Barnwell, 12 How. 280.

If previously accepted by the city, there was no liability on defendants : Curtin v. Somerset, 140 Pa. 70 ; Fitzmaurice v. Fabian, 147 Pa. 199.

Defendants were not independent contractors, but merely the servants of the city : Sh. & Redf. Neg. § 243 ; Allen v. Willard, 57 Pa. 381 ; Harrison v. Collins, 86 Pa. 153 ; Smith v. Simmons, 103 Pa. 32 ; Reynolds v. Braithwaite, 131 Pa. 416 ; Erie v. Caulkins, 85 Pa. 247 ; Painter v. Mayor of Pittsburg, 46 Pa. 222.

Plaintiffs rely greatly upon Erie City v. Caulkins, 85 Pa. 247. In the contract in that case there was a provision, as here, that the contractor will be required to dismiss from his employment all incompetent or unfaithful persons ; but that provision, at best, was but a veto power to be held in terrorem ; in our case the engineer is " to employ such contractors and workmen as in his opinion shall be required for the proper completion of the work."

Where a city, acting within its general powers, contracts for the grading of a public street, and in accordance with the conditions of the contract and the law prescribing the same, the work is done under the immediate supervision of certain officers, whose official duty it is to superintend the work, and damages result not from any negligence or wrongdoing of the contractors, but from the performance of the work in the manner required by the contract, the contractors are the agents of the city, and the city is liable : Dill. Mun. Corp., 4th ed. 1195 ; Sewell v. St. Paul, 20 Minn. 511 ; Hilliard v. Richardson, 3.

Gray, 349; Dunn v. Mellon, 147 Pa. 11; Smith v. Stephen, 66 Md. 381; Buron v. Denman, L. R. 2 Ex. 167; Patterson v. R. R., 76 Pa. 393; Curtin v. Somerset, 140 Pa. 70,

Causes which are successive and unrelated in their operation cannot both be proximate. If two distinct causes are operating at the same time to produce a given result, which might be produced by either, they are concurrent causes. But if two distinct causes are successive and unrelated in their operation, they cannot be concurring. One of them must be the proximate and the other the remote cause. The law regards the proximate as the efficient and responsible cause and disregards the remote: Herr v. Lebanon, 149 Pa. 222.

Where facts are undisputed and "an intervening agent is manifest," the court is to determine the question of proximate cause: Hoag & Alger v. Lake Shore R. R., 85 Pa. 293; West Mahanoy Twp. v. Watson, 116 Pa. 344; Sherman & Redf. Neg., sec. 25; Oil Creek & A. R. R. v. Keighron, 74 Pa. 316; Chartiers Twp. v. Phillips, 122 Pa. 601; Passenger R. R. v. Treich, 117 Pa. 390.

OPINION BY MR. JUSTICE DEAN, Oct. 1, 1894:

The church of plaintiff is a large brick building on the north-west corner of Second and Bushkill streets, in the city of Easton. On January 2, 1891, Bushkill street, in front of the church, commencing at the line of Second street and extending along the street for 75 to 80 feet, caved in, taking with it a portion of the pavement. A large sewer and the water main of the Lehigh Water Company were located longitudinally on Bushkill street, and after the cave-in were found to be broken. A great quantity of water from both flowed towards the church, undermined the pavement and saturated the foundation, causing very serious damage to the property.

The plaintiff alleged the damage was caused by the negligent construction of the sewer in this: The church service pipe connecting with the water main had broken, and the water flowing therefrom had broken in the sewer, undermined the pavement, and damaged the foundation, before being perceptible from the surface; the ground being frozen at the time, until the cave-in, the crust was not disturbed; the service pipe broke, it was alleged, because, in constructing the sewer, the

trench was negligently filled up—the plank sheeting, support-
ing temporarily the sides of the excavation during construction,
being left in, and the cross timbers permitted to remain resting
on the service .pipe, and then the filling-up done by puddling
instead of tamping.   As a result, when the earth settled, the
weight wrenched off the service pipe from its connection, and
the injury followed.

The plaintiff held the defendants answerable for the conse-
quences of this negligent work at the sewer, because, it was
averred, they had, as independent contractors with the city of
Easton, constructed it under a written contract made the 1st
of April, 1890, in pursuance of which contract they had finished
the work about June 12th following.

At the trial, there was much evidence on both sides on the
questions : 1.  Was the injury caused by the negligent construc-
tion of the sewer?   2.  If so, then did this negligence consist
in following the directions of the city engineer, as provided in
the contract?

The court, in a very full charge, submitted the evidence bear-
ing on both questions to the jury.   There was a verdict and
judgment for defendants, and then this appeal, with thirty-
eight assignments of error, each one of them pressed earnestly
at the bar and in elaborate argument in voluminous paper-
books.

At the trial below, as the case was presented by counsel,
and submitted by the court to the jury, the question of negli-
gence was considered first, and that of answerability of defend-
ants second.   We reverse this order, and inquire, first, whether,
under the contract and evidence, the defendants are answer-
able, regardless of proof of negligent construction?

If the negligence which caused the injury was puddling up
of the sewer trench, and leaving in the sheeting which rested
on the service pipe, was this the act of the city, or that of the
defendants as independent contractors?   If the city by the con-
tract retained control of the method of performing the work,
then, to the extent defendants followed the method prescribed,
certainly they were not independent.

The city ordinance, under date of 29th of November, 1889,
enacts: Sec. 1.  ". . . . The department of sewers is hereby
authorized to construct the following described sewers in ac-

cordance with the adopted map and plan on file in the office of the city engineer." Then follows a detailed enumeration of sewers, main and lateral, according to an elaborate plan. The sewer on Bushkill street is called Main Sewer B. Then section 4 enacts: "The building of said sewers shall be under the supervision and management of the city engineer." Paragraph 47 of the contract stipulates that the sewer shall be constructed according to the plans on file, and according to the grades and lines given by the engineer . . . . and the sides of the trench shall, at the contractor's expense, be supported by proper timber-work, when required by the engineer, to prevent caving . . . . and, after the completion of the brick-work, shall be carefully filled up and tamped around the sewer in horizontal layers of not over six inches, until the filling reaches a height of one foot above the top of the sewer, and then carried up in horizontal layers of not over nine inches, to the surface of the street, or within such distance of the surface as the engineer shall direct. And the engineer shall have the right to make alterations in the line, plan, form or quantity of the work; and in consideration of the completion of the work in conformity with the specifications and stipulations, and in strict accordance with the instructions of the engineer, the city agrees to pay, etc. And so, all through the contract, the intent of the city is to reserve control, not only of how the work shall be done to meet the specifications, but to change or vary the specifications as circumstances might suggest during the progress of it. The contractors had but very little authority, independent of the city engineer; in substance, they were to follow the specifications, unless the engineer directed otherwise; when the engineer did direct, then the city exercised the control it had reserved, and the contractors were, as to such work, not independent.

On turning to the evidence touching on the filling of this trench in front of the church, we find that, by the ordinance, the sides of the trench were to be supported by timber-work when required by the engineer, to prevent caving, and the completion of the work, by the contract, was to be in strict accordance with his instructions. The brick-work of the sewer having been finished, to complete the work, required tamping or puddling, either with the sheeting left on the sides of the

trench, or with it taken out. Then the engineer gives this order:

"EASTON, Pa., June 10th, 1890.

"MESSRS. SMITH & MINNAHAN:

"You will not remove any of the sheet piling now on Bushkill street between Front and Third streets, as I am afraid by so doing you will interfere with the gas and water mains.

"Yours truly,

"A. J. COOPER, Engineer."

The city had reserved the right to make such an order, and the contractors were bound to obey it; in so far as leaving the sheeting in was negligence, the city was answerable for the consequences.

The engineer further testified that the method of filling up the trench was by his directions; that he directed them to puddle instead of tamping three feet above the archway to the surface, and it was done as he directed; because, in his opinion, puddling as ordered by him was better work than tamping. James Smith, one of defendants, who had supervision of the work in front of the church, testified that, after tamping three feet above the arch of the sewer, from there to the surface it was puddled as directed by the city engineer. There is no evidence in the case which contradicts this testimony tending to show that the work of filling the trench was wholly controlled by the city. There may have been negligence on the part of the city in the methods adopted, but, in giving such directions as were given, there was no usurpation of authority, but only the exercise of an authority reserved, and to be exercised, if the city chose, independent of the judgment of the contractors.

All the authorities cited by appellants, determining the liability of an independent contractor, are to the effect that if the power to direct is only as to the results of the work, without any control over the manner of performing it, the liability of the contractor remains. But this contract reserved far larger powers than mere direction as to results; as to many items of the specifications, the right to direct the manner in which the work should be done was retained. In very few of the many specifications, was the method of carrying them out left to the skill and judgment of the contractors. Even the right to discharge incompetent workmen was reserved to the city engineer.

If these contractors had done this work in front of the church in the mode set out in the specifications, the engineer only giving such directions as would insure his approval of it, the cases cited, Hunt v. Pa. R. R. Co., 51 Pa. 475; Harrison v. Collins, 86 Pa. 153, and others to the same effect, would apply; but here the case is clearly within the rule laid down in Allen v. Willard, 57 Pa. 374, that the liability of the employer continues where he has not relinquished his control over the work to be done, and the mode of performing it.

The testimony of Cooper, the engineer, and Smith, the contractor, was admissible, because it tended to show the actual exercise by the city of the right reserved under the contract, the alleged consequence of which was the damage complained of. The plaintiff alleged it was negligence to leave in the sheeting, and to puddle the filling of the trench; the defendants replied, this was not negligence, but, even if it were, the city did it, not we. And there is nothing in the evidence to contradict them. True, if the puddling was negligently done, after the engineer directed the contractors to follow that method, and such negligence occasioned the injury, the contractors could not escape liability because the city had changed the method. And there was some evidence tending to establish this part of plaintiff's case. It seems to be made more prominent here than in the court below. Appellants' seventh point, however, fairly embraces it, and the refusal of the court to unqualifiedly affirm it, would, if another trial could be ordered, be ground for reversal.

But there is another point made by appellees to sustain their judgment, which, it seems to us, is conclusive against the appellant. The evidence shows, without dispute, that the Bushkill street sewer in front of the church, between Second and Third streets, was finished by defendants about the 12th of June following the date of the contract, and that outlet connections were soon after made with it. Further, that on August 12th following, it was fully completed, and an ordinance was adopted regulating the connections to be made with it by residents, and permits were issued to those entitled to use it. The sewer had been in possession of, and in actual use by the city, for more than four months before the damage was done the church. The street, the surface of which was 20 feet above the sewer, had been repaired, and all traces of construc-

tion at this point had disappeared. Clearly the city had in
fact resumed full possession of this part of it. That a formal
ordinance accepting the whole of the work done in the city
under the contract, was only adopted October 10, 1891, sub-
ject to the conditions of the contract, does not affect the ques-
tion we are considering. This is not a contention between the
city and its contractors, but between a third party and the con-
tractors. It was the defendants' duty to construct the sewer
according to their contract; that is, their contract duty, and
they were answerable to the city for any breach of it, under
certain circumstances, even after the work was taken off their
hands. But the injury was caused after the completion of this
part of the work, and after it had been in full use and posses-
sion by the city for months. An action of this character in
this state, against the contractor, rests on the principle that,
pending the performance of the work, he is in the place of his
employer: Reynolds v. Braithwaite, 131 Pa. 416. The Penn-
sylvania rule, deducible from all the cases, is, that if the em-
ployer, at the time he resumes possession of the work, from an
independent contractor, knew or ought to have known, or from
a careful examination could have known, that there was any
defect in the work, he is responsible for any injury caused to
a third person by defective construction. Whatever defects
there were in this work, if any, must have been known to the
city when they took possession in August, and not only made
connection with other sewers for outlet, but with the proper-
ties of residents for inlet.

Their engineer, especially qualified, every day during its
construction, saw the material used and the character of the
work; besides, gave special directions as to how it should be
done. In Curtin v. Somerset, 140 Pa. 70, the contractor for a
hotel building had completed his contract, and it was accepted
by the architect and building committee of the hotel company.
Four days afterwards, when a number of the guests of the ho-
tel, among them the plaintiff, were on the porch witnessing a
display of fireworks, one of the girders supporting the porch
gave way, and plaintiff was seriously injured. He brought
suit for damages against the contractor, alleging negligence, in
that the girder was of hemlock, an unsuitable wood to sustain
weight; that it was smaller in size than the contract specifica-
tion called for; that it was cross-grained, besides had been

notched with an ax.   This court held that an independent contractor who builds a house, bridge, or does any other work, owes no duty to third parties, after the work is taken off his hands by the owner.   The rule laid down in Wharton on Negligence, secs. 438, 439, is decided to be the law : " There must be a causal connection between the negligence and the hurt ; and such causal connection is interrupted by the interposition between the negligence and the hurt of any independent human agency. . . . Thus a contractor is employed by a city to build a bridge, and after he has finished his work, and it has been accepted by the city, a traveler is hurt when passing over it by a defect caused by the contractor's negligence.   Now, the contractor may be liable on his contract to the city for his negligence, but he is not liable to the traveler ; . . . . because, between the traveler and contractor intervened the city, an independent responsible agent, breaking the causal connection."

In the case cited, it was held by this court that the court below should have instructed the jury that, as the accident happened after the work had been accepted, and the owner had resumed possession, there could be no recovery by a third party against the contractor for negligence.   The English cases, as well as those in this state, were noticed, and it was decided that none of them were in conflict with this principle.   The " causal connection," as Mr. Wharton terms it, is broken, not by a resolution or ordinance, but by a fact ; has the contractor abandoned his temporary possession, and the owner resumed his permanent one?   If so, the answerability of the contractor for breach of duty is to the owner, under his contract, not to third parties, for as to them he no longer owes any duty.   He no longer stands in place of the owner, for the latter has resumed his relation to the public.

On this ground alone, the defendants were entitled to a peremptory instruction in their favor ; and while the instructions on the first question were not as full and explicit as appellants had a right to ask, no harm was done them, for they, on the whole evidence, were not entitled to a verdict.

The judgment is affirmed, and appeal dismissed at costs of appellants.

Mr. Chief Justice Sterrett dissented.