DU BOIS ELECTRIC CO. v. FIDELITY TITLE & TRUST CO.

(Circuit Court of Appeals, Third Circuit. December 26, 1916. Rehearing Denied February 9, 1917.)

No. 2168.

NEGLIGENCE ⊜⟳55—LIABILITY—DUTY.

 A corporation which contracted with a political party to hang a banner across a street and which had no further duties with respect thereto, though it was, at a later time and under a separate contract, employed to string some lights along the banner, owed no continuing duty to maintain the banner in position, the banner not being in itself a nuisance, and therefore is not liable for injuries to a pedestrian resulting from the fall of the banner.

 [Ed. Note.—For other cases, see Negligence, Cent. Dig. § 68; Dec. Dig. ⊜⟳55.]

In Error to the District Court of the United States for the Western District of Pennsylvania; W. H. Seward Thomson, Judge.

Action by V. W. Pancoast against the Du Bois Electric Company. After the death of plaintiff, the Fidelity Title & Trust Company, as ancillary administrator, was substituted. Judgment for the plaintiff, and defendant brings error. Reversed, and new trial ordered.

A. L. Cole and H. B. Hartswick, both of Clearfield, Pa., for plaintiff in error.

Charles Alvin Jones and Sterrett & Acheson, all of Pittsburgh, Pa., for defendant in error.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

---

McPHERSON, Circuit Judge.    On October 12, 1912, a banner stretched across a street in the borough of Du Bois fell and severely injured Vernon W. Pancoast, a citizen of New York.    In the following March he sued the borough, and in August, 1914, obtained a judgment, which was removed to this court by a writ of error and afterward reversed.    Borough of Du Bois v. Pancoast, 218 Fed. 60, 133 C. C. A. 662.    On October 6, 1914, while the writ of error was pending, he brought a second suit, naming the Du Bois Electric Company, the Deposit National Bank, and Joseph Bensinger (who we understand was the tenant of the Commercial Hotel) as defendants. The suit against the borough was abandoned, and the second action was discontinued so far as the bank and Bensinger were concerned.    Pancoast died in November, 1915, and the Fidelity Title & Trust Company carried on the action as ancillary administrator.    A verdict and judgment for the plaintiff having been obtained in August, 1916, the present writ of error was taken out.    The following facts, which are quoted from the former opinion, appeared also in substance on the last trial:

"In October, 1912, a banner of a political party was stretched across one of the principal streets in the borough of Du Bois.    One end of the supporting cable was fastened to a chimney that extended above the roof of the Commercial Hotel, a four-story brick building abutting on the street.    *   *   *

"The banner—which was of considerable size, was made of rope mesh, and carried a portrait on cloth of one of the candidates for president—had been stretched across the street only a few days before October 12th.    It was suspended from a wire rope or cable, and one end of the cable was fastened to the chimney in question.    The chimney was an extension of the hotel wall, and was about 21 inches square, and probably from 3 to 4 feet in height. The roof of the building was nearly flat, and a cornice extended beyond the chimney about 3 feet, overhanging the sidewalk to this extent.    Two turns were taken about the base of the chimney, and a loop was formed by clamping the end to the body of the cable.    Witnesses testified that on the day in question the weather was 'very stormy,' and described the wind as 'pretty strong' and as 'unusual.'    Whatever may have been the cause of the accident, the chimney broke about 6 or 8 inches above the roof, and the loop probably slipped upward off the chimney, thus letting the banner down. The plaintiff was injured, not by the banner, but by one or more of the falling bricks."

On the trial now under review it appeared further that the Electric Company had put up the banner and had fastened the supports on October 7th.    The company had been employed by M. O. Skinner, the local chairman of the party referred to, Skinner himself having, no doubt, obtained the necessary permission to use the buildings on each side of the street.    The company had no connection with the matter except hanging the banner, and, having done that work, it withdrew from the premises, and on the same evening reported to Skinner.    On October 12th, the day the banner fell, Skinner employed the company to string electric lights along the supporting wire, and this work was done in the morning, the accident taking place in the afternoon.    The company was not the owner or occupier of either building, and, after finishing the work of erection, it did not control or supervise the banner or the supports.    On the two occasions named, the company was engaged by Skinner to do a few hours' work, and thereupon left the premises, and was afterward paid for its services.

The evidence leaves some room for doubt whether the company should be regarded as an independent contractor, or as a master whose servants are permitted to accept temporary employment under another's control and direction. It was testified, without contradiction, that Skinner called at the company's office and asked to have the banner put up; that the company sent two men to do the work; that one of them met Skinner the same evening and told him how the cable had been fastened, to which Skinner replied that it was all right; that the company charged for the work by the hour, paying the men their regular wages, and was afterwards repaid by Skinner; and that the company had no access to the buildings and no control over the banner after it had been hung. For present purposes we shall treat the contract as an independent employment, but, clearly it had a very limited object. The company was to furnish laborers for a few hours' work and to be repaid the ordinary wages for their services. Nothing more was contemplated, and the slightness of the thing to be done, and the brevity of time required to do it, go far, in themselves, to forbid the inference that the company was intended to have, or actually did have, any further control after the men had finished the job and had left the premises.

Under all this evidence, was the company liable for the injury? The verdict necessarily implies that the work was negligent, and for the legal consequences thereof the company may have been liable on its contract with Skinner. But it had no contract with Pancoast, and if it is bound to make reparation for his injury, this must be for the reason that it owed him a duty as a person lawfully using the street. But, as we decided in 218 Fed. 60, 133 C. C. A. 662, the banner was not in itself a nuisance, and the only ground, therefore, for holding the defendant liable to Pancoast would be a continuing duty resting on the company so to maintain the banner that persons on the street should not be endangered. The plaintiff's difficulty is that no facts were proved to support the inference of such a duty. The company's only relation to the work grew out of its employment by Skinner, which was limited in scope and time, and had been fully performed. The company had no further control over the banner. It had nothing to do with the supporting buildings, and had no right to enter them without permission from the occupiers. Its connection with the transaction had ceased—the stringing of the lights was a second and separate employment, and does not strengthen the plaintiff's case—and we can find no evidence to support the theory on which the jury was allowed to find a verdict. A Pennsylvania decision in point is Curtin v. Somerset, 140 Pa. 70, 21 Atl. 244, 12 L. R. A. 322, 23 Am. St. Rep. 220. There, a contractor to erect a hotel disobeyed the specifications and built the porch negligently. After the hotel had been turned over to a tenant of the owner, a guest who suffered injury by reason of the contractor's conduct sued him for damages, but was not allowed to recover, the court saying:

"The question arises, What is the responsibility of the contractor under such circumstances? That he would be responsible to the company for any loss sustained by it in consequence of his failure to erect the building in conformity to the plans and specifications may be conceded. There was a con-

tractual relation between them, and for breach of a contract, not known to and approved by the company, he would be liable. Is he also liable for an injury to a third person not a party to the contract, sustained by reason of defective construction? It is very clear that he was not responsible by force of any contractual relation, for, as before observed, there was no contract between these parties, and hence there could have been no breach. If liable at all, it can only be for a violation of some duty. It may be stated, as a general proposition, that a man is not responsible for a breach of duty where he owes no duty. What duty did the defendant owe to the plaintiff? The latter was not upon the porch by the invitation of the defendant. The proprietor of the hotel, or whoever invited or procured the presence of the plaintiff there, may be said to have owed him a duty, the duty of ascertaining that the porch was of sufficient strength to safely hold the guests whom he had invited. The plaintiff contended, however, that as the hotel company was not responsible, the contractor must necessarily be so. This, however, is moving in a circle. It by no means follows that, because A. is not responsible for an accident, B. or some other person must be."

See, also, Fitzmaurice v. Fabian, 147 Pa. 199, 23 Atl. 444, Congregation, etc., v. Smith, 163 Pa. 561, 30 Atl. 279, and the collection of cases to be found in 26 L. R. A. 505, 43 Am. St. Rep. 808; Thornton v. Dow, 60 Wash. 622, 111 Pac. 899, 32 L. R. A. (N. S.) 968.

The jury should have been instructed to find a verdict for the defendant, and the judgment is therefore reversed and a new trial awarded.