Frank McCaffrey *vs.* Mossberg & Granville Mfg. Co..

PROVIDENCE—DECEMBER 11, 1901.

Present : Stiness, C. J., Tillinghast and Rogers, JJ.

(1) *Negligence. Privity of Contract. Liability to Third Parties.*

A. built a machine and sold it to B., a manufacturing jeweler. C., an employee of B., while operating the machine, was injured by the fall of a weight which was caused by the breaking of a hook. C. brought an action against A., alleging negligence in the original construction of the machine. On demurrer :—

*Held,* that C. could not recover.

Where the instrumentality which is the cause of the injury is not in its nature imminently dangerous, where it does not depend upon fraud,.

concealment, or implied invitation, and where the plaintiff is not in privity of contract with the defendant, an action for negligence cannot be maintained, since the misfortune to third parties cannot be regarded as a natural and necessary consequence of the builder's negligence.

Trespass on the Case.  The facts are stated in full in the opinion.  Heard on demurrer to declaration, and demurrer sustained.

Stiness, C. J.  This is an action of trespass on the case for negligence.  The declaration alleges, in substance, that the plaintiff was in the employ of George W. Dover, a manufacturing jeweler, and while engaged in operating a drop press, in which was a heavy weight held by a hook, the hook broke and the weight fell upon his hand and injured it; that the machine was manufactured by the defendant and sold to Dover; that it was the duty of the defendant to use due care in the manufacture thereof, but that the machine was negligently built and defective in this—that the hook was made of iron or steel of poor quality, of insufficient size; that the hook had been improperly welded, with cracks or crevices through the hook; that the defendant knew, or had reason to know, and, but for want of reasonable care, would have known, that the machine, when it was sold, was a dangerous appliance, liable to endanger the life and limb of an operator using due care by the breaking of said hook and the falling of the weight.

The defendant demurs to the declaration.  The case raises the question whether the maker of a machine which he sells to another is liable to a third person for injuries arising from negligence in its construction.  This question has frequently been before other courts, but it has not been raised before in this State.

Cases which involve the liability of a defendant to those with whom he does not stand in privity of contract may be grouped into three classes: (1) where the thing causing the injury is of a noxious or dangerous kind; (2) where the defendant has been guilty of fraud or deceit in passing off the thing; (3) where the defendant has been negligent in

some respect with reference to the sale or construction of a thing not imminently dangerous.

The principle that governs the first class of cases is that one who deals with an imminently dangerous article owes a public duty to all to whom it may come, and whose lives may be endangered thereby, to exercise caution adequate to the peril involved. This principle has been applied in many cases of the sale of poisonous drugs under a false label.

Such was the leading case in this country of *Thomas* v. *Winchester*, 6 N. Y. 397, in which, as one ground of inference of public duty, the court said : "Every man who, by his culpable negligence, causes the death of another, although without intent to kill, is guilty of manslaughter." Hence it argued that the duty of exercising caution did not arise out of the contract of sale, so as to be confined to the immediate vendee ; but that the wrong done was the putting out of the poison, as an article of merchandise, to be sold and afterwards used, under another name, by some person then unknown. The same opinion has been expressed in *Wellington* v. *Downer*, 104 Mass. 64, in which dangerous naphtha was sold ; in *Norton* v. *Sewall*, 106 Mass. 143, in which laudanum was sold for rhubarb ; in *Davis* v. *Guarnieri*, 45 Ohio St. 470 ; *Elkins* v. *McKean*, 79 Pa. St. 493 ; and in *George* v. *Skivington*, 5 L. R. Exch. 1, relating to inherently dangerous articles ; and *Devlin* v. *Smith*, 89 N. Y. 470, where the defect in a scaffold was held to be imminently dangerous. The principle of these cases may be supported on two grounds : That of an illegal act, when, as in most States, there are statutory provisions which impose a public duty upon those who deal with poisons and dangerous substances, like gunpowder, naphtha, etc.; and that of the duty which the law imposes upon every one to avoid acts which, in their nature, are dangerous to the lives of others. Of this class familiar examples are those who allow vicious animals to run at large, and who throw deadly missiles into a gathering of people. The putting forth of a dangerous article or substance, which is quite as sure to injure somebody, is not essentially different.

A similar principle governs the second class of cases, in

which the degree of danger in the thing itself may be less, but where the seller actually knows of the danger in the article and puts it forth by some fraud or deceit. In such cases the breach of duty grows out of the fraud or deceit in the sale, and it extends to persons injured thereby, who may reasonably be deemed to be within the contemplation of the parties to the transaction. Thus in *Levy* v. *Langridge*, 4 M. & W. 336, the allegations were that a father bought a gun of the defendant, for the use of himself and sons, upon the special warranty that it was made by a certain manufacturer, and that it was a good, safe, and secure gun, whereas it was unsafe, ill-made, and dangerous; that the defendant was guilty of willful deceit, negligence, and improper conduct in the sale, and that the gun burst in the hands of a son. The judgment was that, as there was fraud and damage, the result of that fraud not from an act remote and consequential but one contemplated by the defendant at the time as one of its results, the party guilty of the fraud was responsible to the party injured.

In *Lewis* v. *Terry*, 111 Cal. 39, the defendant sold a folding bed to the plaintiff's landlord, knowing it to be dangerous, because of concealed defects, and he was held to be liable to the plaintiff, who had hired the furnished room, for an injury caused by such defect. The court said : "The fact insisted upon by respondent that a bed is not ordinarily a dangerous instrumentality, is of no moment in this case ; if mere nonfeasance or perhaps misfeasance was the extent of the wrong charged against defendants, that consideration would be important (*Thomas* v. *Winchester*, 6 N. Y. 397 ; 57 Am. Dec. 455) ; but the fact that such articles are in general not dangerous, would seem to enhance the wrong of representing one to be safe for use when known to be really unsafe, for the danger is thus rendered more insidious."

In *Davies* v. *Pelham*, 72 N. Y. Sup. Ct. (65 Hun.) 573, and 83 N. Y. Sup. Ct. (76 Hun.) 289, remarks were made to the effect that the action could be maintained against the builder of a derrick for a painter by the administratrix of an employee killed by a defect therein, upon the ground of simple

negligence; but the case turned upon the fact that the defective rope had been selected by the deceased himself, and not upon the question about which the court expressed its opinion.

· *Bright* v. *Barnett*, 88 Wis. 299, a case for the death of an employee caused by a defective staging built by the defendant for the employer, was sustained upon the ground of an implied invitation. See also *Heaven* v. *Pender*, 11 L. R. Q. B. 503; *Necker* v. *Harvey*, 49 Mich. 517.

The case of *Schubert* v. *Clark*, 49 Minn. 331, chiefly relied on by the plaintiff, really belongs to this class of cases in which an element of fraud appears. The defendant corporation made and sold ladders. The allegations were that the plaintiff was injured by the breaking of a ladder sold by the defendant to the plaintiff's employer; that it was made of poor, cross-grained, and decayed lumber, and that this defect had been so concealed by oil, paint, and varnish that a person could not discover that it was made of defective material. If this was so the defendant's servants must have known of the defect, because it was patent and they concealed it. A corporation can act only through its agents and servants. Hence their knowledge is imputed to the corporation. It was clearly a deceit so to cover up the defect in the ladder. One part of the opinion treats it as a deceit, although the opinion goes to the extent of saying that the defendant was responsible for negligence.

*Bishop* v. *Weber*, 139 Mass. 411, is also relied on by the plaintiff. In that case a caterer who furnished food at a ball was sued for providing unwholesome food. But in that case the declaration averred that the defendant agreed to furnish good and wholesome food to all who might wish it, and to be paid therefor the sum of $1.25 by each and every person who partook thereof; and that the plaintiff had such ticket, etc., so paid for. The declaration did not aver knowledge or fraud on the part of the defendant. The court said that it would be hard to establish an implied contract with each individual; but we are unable to see why this should be so. It seems to be a most natural conclusion under

the circumstances, or, at least, that, as in the case of a staging for workmen, there was an implied invitation by the defendant to partake of the food, such as to raise an implication of duty. The ground upon which the court sustained the declaration was this: "The furnishing of provisions which endanger human life or health stands clearly upon the same ground as the administering of improper medicines, from which a liability springs irrespective of any question of privity of contract between the parties." The court cites as authorities *Norton* v. *Sewall*, 106 Mass. 143, which related to a deadly poison; *Longmeid* v. *Holliday*, 6 Exch. 761, where an unsafe lamp had been sold to the husband of the injured plaintiff, but the court gave a nonsuit because neither knowledge nor fraud was shown, and the lamp was not in its nature dangerous; *Pippin* v. *Sheppard*, 11 Price, 400, which was a case of unskillful treatment by a surgeon. We fail to see how the declaration could have been sustained on the authority of either of these cases.

The third class of cases relating to the sale of a thing not in its nature dangerous rests on the principle that as to such things there is no general or public duty, but only a duty which arises from contract, out of which no duty arises to strangers to the contract.

The leading case of this class is *Winterbottom* v. *Wright*, 10 M. & W. 107. The plaintiff was a mail coachman, who was injured by a latent defect in a mail-coach which the defendant, under a contract with the postmaster-general, was to keep in good repair. It was held that the plaintiff could not recover. The grounds of the decision were that the case was not like *Levy* v. *Langridge*, "for there the gun was bought for the use of the son, the plaintiff in that action, who could not make the bargain himself, but was really and substantially the party contracting. Here the action is brought simply because the defendant was a contractor with a third person; and it is contended that thereupon he became liable to everybody who might use the carriage." Also, that the case was not like those which amounted to a public nuisance, and hence raised a public duty; that, consequently,

there being neither privity of contract nor public duty, the action could not be maintained.

The case was followed in *Collis* v. *Selden*, L. R. 3 C. P. Cas. 495, where the defendant negligently and improperly hung a chandelier in a public house, which fell upon the plaintiff. The opinions in the case stated that, there being no public nuisance, no privity of contract, no fraud or concealment, no invitation, and no actual knowledge, the action would not lie. In both cases it was said that there would be no end of cases if the action could be sustained.

It is needless to examine critically the numerous cases on this question, because they rest upon the application of the principles stated above. See *Curtin* v. *Somerset*, 140 Pa. St. 70, where a hotel was improperly constructed; *Loop* v. *Litchfield*, 42 N. Y. 351, which involved the bursting of a balance-wheel; *Losee* v. *Clute*, 51 N. Y. 494, the explosion of a steam boiler; *Heizer* v. *Kingsland*, 110 Mo. 605, the explosion of a cylinder of a steam threshing-machine; *Bragdon* v. *Perkins*, 87 Fed. Rep. 109, an unsafe side-saddle; *Caledonian Co.* v. *Mulholland*, L. R. App. Cas. 1898, 216; *Savings Bank* v. *Ward*, 100 U. S. 195, an attorney's certificate of title. In all of these cases the right of the plaintiff to recover was denied.

(1) We think that the result of the cases on this subject clearly establishes the weight of authority in favor of the rule that where the cause of the injury is not in its nature imminently dangerous; where it does not depend upon fraud, concealment, or implied invitation; and where the plaintiff is not in privity of contract with the defendant, an action for negligence cannot be maintained.

The reason for the rule is well stated in *Thomas* v. *Winchester*, as follows: "If A. build a wagon and sell it to B. who sells it to C. and C. hires it to D. who, in consequence of the gross negligence of A. in building the wagon, is overturned and injured, D. cannot recover damages against A. as the builder. A.'s obligation to build the wagon faithfully arises solely out of his contract with B. The public have nothing to do with it. Misfortune to third persons not par-

ties to the contract would not be a natural and necessary consequence of the builder's negligence ; and such negligence is not an act imminently dangerous to human life."

The declaration in this case simply charges negligence, without any of the other necessary elements, and hence the demurrer to the declaration must be sustained.

*Page & Page and Cushing,* for plaintiff.
*Comstock & Gardner,* for defendant.