HUSET v. J. I. CASE THRESHING MACH. CO.

(Circuit Court of Appeals, Eighth Circuit. February 26, 1903.)

No. 1,790.

1. NEGLIGENCE—LIABILITY OF MANUFACTURER, VENDOR, OR CONTRACTOR TO THIRD PARTIES—GENERAL RULE.

It is the general rule that a contractor, manufacturer, or vendor is not liable to third parties who have no contractual relations with him for negligence in the construction, manufacture, or sale of the articles he handles.

2. SAME—EXCEPTION TO RULE—POISONS, FOODS, ARTICLES AFFECTING LIFE AND HEALTH.

. An act of negligence of a manufacturer or vendor which is imminently dangerous to human life or health, and which occurs in the preparation or sale of articles, like foods and poisons, whose primary use is to preserve, destroy, or affect life and health, is actionable by parties who have no contractual relations with the manufacturer or vendor.

3. SAME—INVITATION TO USE.

An owner who impliedly invites third parties to use defective machines or instruments manufactured or furnished by him is liable to them for injuries resulting from his negligence in the manufacture or care of them.

4. SAME—MANUFACTURER'S OR VENDOR'S KNOWLEDGE OF DANGEROUS CHARACTER WHEN DELIVERED.

A manufacturer or vendor, who, without giving notice of its character or qualities, supplies or delivers to another a machine or article which, at the time of delivery, he knows to be imminently dangerous to the life or limbs of any one who may use it for the purpose for which it is intended, is liable to any one who sustains injury from its dangerous condition, whether he has any contractual relations with him or not.

(Syllabus by the Court.)

In Error to the Circuit Court of the United States for the District of Minnesota.

This writ of error was sued out to reverse a judgment sustaining a demurrer to the amended complaint of O. S. Huset, the plaintiff below and the plaintiff in error here, in an action for personal injury, which he brought against the J. I. Case Threshing Machine Company, a corporation. These are the facts which the complaint discloses: The threshing machine company was a corporation engaged in the manufacture and sale of threshing rigs, which consisted of an engine, a separator, a band-cutter, and self-feeder. The band-cutter and self-feeder consisted of a series of fast revolving knives covered with a sheet-iron covering and a frame designed to fit into the front of the separator in which the cylinder was located. The cylinder was made of iron and steel about 48 inches in length and 20 inches in diameter, set with rows of steel teeth and spikes projecting about two inches, and so placed as to pass between similar teeth in a concave frame in front of and under the cylinder. When the machine was in operation, this cylinder revolved at a very high rate of speed with great force, and threshed the grain. The self-feeder and band-cutter was designed to be fastened to the separator, and its sheet-iron covering fitted onto the front of the separator just above and over the front part of the cylinder so as to cover the cylinder completely. The object and design of the defendant in placing this covering over the cylinder was that it should be used by any person who might operate the machine to walk upon in passing from the top of the main part of the thresher to the self-feeder. This sheet-iron covering was made without any support, and was so pliable and easily bent that it was incapable of sustaining the least weight, and would necessarily bend and collapse when subjected to the weight of any man who might walk or step upon it. It was necessary for the opera-

¶ 4. See Negligence, vol. 37, Cent. Dig. § 25.

tor to walk over the covering of the cylinder in operating the machine. This machine, covered in this way, was imminently and necessarily dangerous to the life and limbs of those who operated it, and it was well known to be thus dangerous by the defendant when it shipped the same and supplied it to the purchaser, J. H. Pifer; but this dangerous condition was of such a nature as not to be readily discovered by persons engaged in operating the machine or working thereon, but was concealed, and thereby rendered more dangerous still. On August 25, 1901, the defendant sold this threshing outfit to J. H. Pifer, who started to operate it on the next day, and employed the plaintiff, O. S. Huset, as a laborer to assist him in running it. It became the duty of the plaintiff to walk upon the top of the machine over the cylinder while it was in operation in order to superintend the pitching of bundles into the self-feeder, to prevent its clogging, and to oil the bearings of the parts of the cylinder and band-cutter. When he walked upon the covering of the cylinder, this covering sank so as to come in contact with the cylinder, and the plaintiff's right foot was caught thereby, and his foot and leg were drawn into it and crushed to a point above the knee joint, so that it was necessary to amputate the leg above the knee. The demurrer to this complaint rests upon the ground that the defendant owed no duty to the plaintiff, who was a stranger to the transaction between the defendant, the manufacturer and vendor of the threshing machine, and the vendee, Pifer. The court sustained the demurrer, and dismissed the action.

Halvor Steenerson (Charles Loring, on the brief), for plaintiff in error.

W. E. Black (Alfred L. Cary and Horace A. J. Upham, on the brief), for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

SANBORN, Circuit Judge, after stating the case as above, delivered the opinion of the court.

Is a manufacturer or vendor of an article or machine which he knows, when he sells it, to be imminently dangerous, by reason of a concealed defect therein, to the life and limbs of any one who shall use it for the purpose for which it was made and intended, liable to a stranger to the contract of sale for an injury which he sustains from the concealed defect while he is lawfully applying the article or machine to its intended use?

The argument of this question has traversed the whole field in which the liability of contractors, manufacturers, and vendors to strangers to their contracts for negligence in the construction or sale of their articles has been contested. The decisions which have been cited are not entirely harmonious, and it is impossible to reconcile all of them with any established rule of law. And yet the underlying principle of the law of negligence, that it is the duty of every one to so act himself and to so use his property as to do no unnecessary damage to his neighbors, leads us fairly through the maze. With this fundamental principle in mind, if we contemplate the familiar rules that every one is liable for the natural and probable effects of his acts; that negligence is a breach of a duty; that an injury that is the natural and probable consequence of an act of negligence is actionable, while one that could not have been foreseen or reasonably anticipated as the probable effect of such an act is not actionable, because the act of negligence in such a case is the remote, and not the proximate, cause of the injury; and that, for the same reason, an injury is not actionable which would not have resulted from an act of negligence except from the interposition

of an independent cause (Chicago, St. Paul, Minneapolis & Omaha R. Co. v. Elliott, 55 Fed. 949, 5 C. C. A. 347, 20 L. R. A. 582)—nearly all the decisions upon this subject range themselves along symmetrical lines, and establish rational rules of the law of negligence consistent with the basic principles upon which it rests.

Actions for negligence are for breaches of duty. Actions on contracts are for breaches of agreements. Hence the limits of liability for negligence are not the limits of liability for breaches of contracts, and actions for negligence often accrue where actions upon contracts do not arise, and vice versa. It is a rational and fair deduction from the rules to which brief reference has been made that one who makes or sells a machine, a building, a tool, or an article of merchandise designed and fitted for a specific use is liable to the person who, in the natural course of events, uses it for the purpose for which it was made or sold, for an injury which is the natural and probable consequence of the negligence of the manufacturer or vendor in its construction or sale. But when a contractor builds a house or a bridge, or a manufacturer constructs a car or a carriage, for the owner thereof, under a special contract with him, an injury to any other person than the owner for whom the article is built and to whom it is delivered cannot ordinarily be foreseen or reasonably anticipated as the probable result of the negligence in its construction. So, when a manufacturer sells articles to the wholesale or retail dealers, or to those who are to use them, injury to third persons is not generally the natural or probable effect of negligence in their manufacture, because (1) such a result cannot ordinarily be reasonably anticipated, and because (2) an independent cause—the responsible human agency of the purchaser—without which the injury to the third person would not occur, intervenes, and, as Wharton says, "insulates" the negligence of the manufacturer from the injury to the third person. Wharton on Law of Negligence (2d Ed.) § 134. For the reason that in the cases of the character which have been mentioned the natural and probable effect of the negligence of the contractor or manufacturer will generally be limited to the party for whom the article is constructed, or to whom it is sold, and, perhaps more than all this, for the reason that a wise and conservative public policy has impressed the courts with the view that there must be a fixed and definite limitation to the liability of manufacturers and vendors for negligence in the construction and sale of complicated machines and structures which are to be operated or used by the intelligent and the ignorant, the skillful and the incompetent, the watchful and the careless, parties that cannot be known to the manufacturers or vendors, and who use the articles all over the country hundreds of miles distant from the place of their manufacture or original sale, a general rule has been adopted and has become established by repeated decisions of the courts of England and of this country that in these cases the liability of the contractor or manufacturer for negligence in the construction or sale of the articles which he makes or vends is limited to the persons to whom he is liable under his contracts of construction or sale. The limits of the liability for negligence and for breaches of contract in cases of this character are held to be identical. The general rule is that

a contractor, manufacturer, or vendor is not liable to third parties who have no contractual relations with him for negligence in the construction, manufacture, or sale of the articles he handles. Winterbottom v. Wright, 10 M. & W. 109; Longmeid v. Holliday, 6 Exch. 764, 765; Blakemore v. Ry. Co., 8 El. & Bl. 1035; Collis v. Selden, L. R. 3 C. P. 495, 497; Bank v. Ward, 100 U. S. 195, 204, 25 L. Ed. 621; Bragdon v. Perkins-Campbell Co., 87 Fed. 109, 30 C. C. A. 567; Goodlander v. Standard Oil Co., 63 Fed. 400, 406, 11 C. C. A. 253, 259, 27 L. R. A. 583; Loop v. Litchfield, 42 N. Y. 351, 359, 1 Am. Rep. 513; Losee v. Clute, 51 N. Y. 494, 10 Am. Rep. 623; Curtain v. Somerset, 140 Pa. 70, 21 Atl. 244, 12 L. R. A. 322, 23 Am. St. Rep. 220; Heizer v. Kingsland & Douglass Mfg. Co., 110 Mo. 605, 615, 617, 19 S. W. 630, 15 L. R. A. 821, 33 Am. St. Rep. 481; Daugherty v. Herzog, 145 Ind. 255, 44 N. E. 457, 32 L. R. A. 837, 57 Am. St. Rep. 204; Burke v. De Castro, 11 Hun, 354; Swan v. Jackson, 55 Hun, 194, 7 N. Y. Supp. 821; Barrett v. Mfg. Co., 31 N. Y. Super. Ct. 545; Carter v. Harden, 78 Me. 528, 7 Atl. 392; McCaffrey v. Mfg. Co. (R. I.) 50 Atl. 651, 55 L. R. A. 822; Marvin Safe Co. v. Ward, 46 N. J. Law, 19; Burdick v. Cheadle, 26 Ohio St. 393, 20 Am. Rep. 767; Davidson v. Nichols, 11 Allen, 514; J. I. Case Plow Works v. Niles & Scott Co. (Wis.) 63 N. W. 1013.

In these cases third parties, without any fault on their part, were injured by the negligence of the manufacturer, vendor, or furnisher of the following articles, while the parties thus injured were innocently using them for the purposes for which they were made or furnished, and the courts held that there could be no recovery, because the makers, vendors, or furnishers owed no duty to strangers to their contracts of construction, sale, or furnishing: A stagecoach, Winterbottom v. Wright, 10 M. & W. 109; a leaky lamp, Longmeid v. Holliday, 6 Exch. 764, 765; a defective chain furnished one to lead stone, Blakemore v. Ry. Co., 8 El. & Bl. 1035; an improperly hung chandelier, Collis v. Selden, L. R. 3 C. P. 495, 497; an attorney's certificate of title, Bank v. Ward, 100 U. S. 195, 204, 25 L. Ed. 621; a defective valve in an oil car, Goodlander v. Standard Oil Co., 63 Fed. 401, 406, 11 C. C. A. 253, 259, 27 L. R. A. 583; a porch on a hotel, Curtain v. Somerset, 140 Pa. 70, 21 Atl. 244, 12 L. R. A. 322, 23 Am. St. Rep. 220; a defective side saddle, Bragdon v. Perkins-Campbell Co., 87 Fed. 109, 30 C. C. A. 567; a defective rim in a balance wheel, Loop v. Litchfield, 42 N. Y. 351, 359, 1 Am. Rep. 513; a defective boiler, Losee v. Clute, 51 N. Y. 494, 10 Am. Rep. 623; a defective cylinder in a threshing machine, Heizer v. Kingsland & Douglass Mfg. Co., 110 Mo. 605, 615, 617, 19 S. W. 630, 15 L. R. A. 821, 33 Am. St. Rep. 481; a defective wall which fell on a pedestrian, Daugherty v. Herzog, 145 Ind. 255, 44 N. E. 457, 32 L. R. A. 837, 57 Am. St. Rep. 204; a defective rope on a derrick, Burke v. Refining Co., 11 Hun, 354; a defective shelf for a workman to stand upon in placing ice in a box, Swan v. Jackson, 55 Hun, 194, 7 N. Y. Supp. 821; a defective hoisting rope of an elevator, Barrett v. Mfg. Co., 31 N. Y. Super. Ct. 545; a runaway horse, Carter v. Harden, 78 Me. 528, 7 Atl. 392; a defective hook holding a heavy weight in a drop press, McCaffrey v. Mfg. Co. (R. I.) 50 Atl. 651, 55 L. R. A. 822; a defective bridge, Marvin Safe Co. v.

Ward, 46 N. J. Law, 19; shelves in a dry goods store, whose fall injured a customer, Burdick v. Cheadle, 26 Ohio St. 393, 20 Am. Rep. 767; a staging erected by a contractor for the use of his employés, McGuire v. McGee (Pa.) 13 Atl. 551; defective wheels, J. I. Case Plow Works v. Niles & Scott Co. (Wis.) 63 N. W. 1013.

In the leading case of Winterbottom v. Wright this rule is placed upon the ground of public policy, upon the ground that there would be no end of litigation if contractors and manufacturers were to be held liable to third persons for every act of negligence in the construction of the articles or machines they make after the parties to whom they have sold them have received and accepted them. In that case the defendant had made a contract with the Postmaster General to provide and keep in repair the stagecoach used to convey the mail from Hartford to Holyhead. The coach broke down, overturned, and injured the driver, who sued the contractor for the injury resulting from his negligence. Lord Abinger, C. B., said:

"There is no privity of contract between these parties; and, if the plaintiff can sue, every passenger, or even any person passing along the road, who 'was injured by the upsetting of the coach, might bring a similar action. Unless we confine the operation of such contracts as this to the parties who entered into them, the most absurd and outrageous consequences, to which I can see no limit, would ensue."

Baron Alderson said:

"I am of the same opinion. The contract in this case was made with the Postmaster General alone; and the case is just the same as if he had come to the defendant and ordered a carriage, and handed it at once over to Atkinson. If we were to hold that the plaintiff could sue in such a case, there is no point at which such actions would stop. The only safe rule is to confine the right to recover to those who enter into the contract. If we go one step beyond that, there is no reason why we should not go fifty."

The views expressed by the judges in this case have prevailed in England and in the United States, with the exception of two decisions which are in conflict with the leading case and with all the decisions to which reference has been made. Those cases are Devlin v. Smith, 89 N. Y. 470, 42 Am. Rep. 311, in which Smith, a painter, employed Stevenson, a contractor, to build a scaffold 90 feet in height, for the express purpose of enabling the painter's workmen to stand upon it to paint the interior of the dome of a building, and the Court of Appeals of New York held that Stevenson was liable to a workman of Smith, the painter, who was injured by a fall, caused by the negligence of Stevenson in the construction of the scaffold upon which he was working; and Schubert v. J. R. Clark Co., 49 Minn. 331, 51 N. W. 1103, 15 L. R. A. 818, 32 Am. St. Rep. 559, in which a painter purchased of a manufacturer a stepladder, and one of the painter's employés, who was injured by the breaking of a step caused by the negligence of the manufacturer, was permitted to recover of the latter for the injuries he had sustained. The decision in Devlin v. Smith may, perhaps, be sustained on the ground that the workmen of Smith were the real parties in interest in the contract, since Stevenson was employed and expressly agreed to construct the scaffold for their use. But the case of Schubert v. J. R. Clark Co. is in direct conflict with the side saddle case, Bragdon v. Perkins-Campbell Co., 87 Fed. 109, 30 C. C. A. 567;

the porch case, Curtain v. Somerset, 140 Pa. 70, 21 Atl. 244, 12 L. R. A. 322, 23 Am. St. Rep. 220; the defective cylinder case, Heizer v. Kingsland & Douglass Mfg. Co., 110 Mo. 617, 19 S. W. 630, 15 L. R. A. 821, 33 Am. St. Rep. 481; the defective hook case, McCaffrey v. Mfg. Co. (R. I.) 50 Atl. 651, 55 L. R. A. 822; and with the general rule upon which all these cases stand.

It is, perhaps, more remarkable that the current of decisions throughout all the courts of England and the United States should be so uniform and conclusive in support of this rule, and that there should, in the multitude of opinions, be but one or two in conflict with it, than it is that such sporadic cases should be found. They are insufficient in themselves, or in the reasoning they contain, to overthrow or shake the established rule which prevails throughout the English speaking nations.

But while this general rule is both established and settled, there are, as is usually the case, exceptions to it as well defined and settled as the rule itself. There are three exceptions to this rule.

The first is that an act of negligence of a manufacturer or vendor which is imminently dangerous to the life or health of mankind, and which is committed in the preparation or sale of an article intended to preserve, destroy, or affect human life, is actionable by third parties who suffer from the negligence. Dixon v. Bell, 5 Maule & Sel. 198; Thomas v. Winchester, 6 N. Y. 397, 57 Am. Dec. 455; Norton v. Sewall, 106 Mass. 143, 8 Am. Rep. 298; Elkins v. McKean, 79 Pa. 493, 502; Bishop v. Weber, 139 Mass. 411, 1 N. E. 154, 52 Am. Rep. 715; Peters v. Johnson (W. Va.) 41 S. E. 190, 191, 57 L. R. A. 428. The leading case upon this subject is Thomas v. Winchester, 6 N. Y. 397, 57 Am. Dec. 455. A dealer in drugs sold to a druggist a jar of belladonna, a deadly poison, and labeled it "Extract of Dandelion." The druggist filled a prescription of extract of dandelion, prepared by a physician for his patient. The patient took the prescription thus filled, and recovered of the wholesale dealer for the injuries she sustained. In Norton v. Sewall, 106 Mass. 143, 8 Am. Rep. 298, a recovery was had by a third party for the sale of laudanum as rhubarb; in Bishop v. Weber, for the furnishing of poisonous food for wholesome food; in Peters v. Johnston, for the sale of saltpetre for epsom salts; and in Dixon v. Bell, for placing a loaded gun in the hands of a child. In all these cases of sale the natural and probable result of the act of negligence—nay, the inevitable result of it—was not an injury to the party to whom the sales were made, but to those who, after the purchasers had disposed of the articles, should consume them. Hence these cases stand upon two well-established principles of law: (1) That every one is bound to avoid acts or omissions imminently dangerous to the lives of others, and (2) that an injury which is the natural and probable result of an act of negligence is actionable. It was the natural and probable result of the negligence in these cases that the vendees would not suffer, but that those who subsequently purchased the deleterious articles would sustain the injuries resulting from the negligence of the manufacturers or dealers who furnished them.

The second exception is that an owner's act of negligence which causes injury to one who is invited by him to use his defective ap-

pliance upon the owner's premises may form the basis of an action against the owner. Coughtry v. Globe Woolen Co., 56 N. Y. 124, 15 Am. Rep. 387; Bright v. Barnett & Record Co. (Wis.) 60 N. W. 418, 420, 26 L. R. A. 524; Heaven v. Pender, L. R. 11 Q. B. Div. 503; Roddy v. Railway Co., 104 Mo. 234, 241, 15 S. W. 1112, 12 L. R. A. 746, 24 Am. St. Rep. 333. In Coughtry v. Globe Woolen Co., 56 N. Y. 124, 15 Am. Rep. 387, the owner of a building employed Osborn & Martin to construct a cornice, and agreed with them to furnish a scaffold upon which their men could perform the work. He furnished the scaffold, and one of the employés of the contractors was injured by the negligence of the owner in constructing the scaffold. The court held that the act of the owner was an implied invitation to the employés of Osborn & Martin to use the scaffold, and imposed upon him a liability for negligence in its erection. The other cases cited to this exception are of a similar character.

The third exception to the rule is that one who sells or delivers an article which he knows to be imminently dangerous to life or limb to another without notice of its qualities is liable to any person who suffers an injury therefrom which might have been reasonably anticipated, whether there were any contractual relations between the parties or not. Langridge v. Levy, 2 M. & W. 519, 4 M. & W. 337; Wellington v. Oil Co., 104 Mass. 64, 67; Lewis v. Terry (Cal.) 43 Pac. 398. In Langridge v. Levy, 2 M. & W. 519, a dealer sold a gun to the father for the use of the son, and represented that it was a safe gun, and made by one Nock. It was not made by Nock, was a defective gun, and when the son discharged it, it exploded and injured him. The son was permitted to recover, because the defendant had knowingly sold the gun to the father for the purpose of being used by the plaintiff by loading and discharging it, and had knowingly made a false warranty that this might be safely done, and the plaintiff, on the faith of that warranty, and believing it to be true, had used the gun, and sustained the damages. The court said in conclusion:

"We therefore think that, as there is fraud, and damage, the result of that fraud, not from an act remote and consequential, but one contemplated by the defendant at the time as one of its results, the party guilty of the fraud is responsible to the party injured."

This case was affirmed in 4 M. & W. 337, on the ground that the sale of the gun to the father for the use of the son with the knowledge that it was not as represented was a fraud, which entitled the son to recover the damages he had sustained.

In Wellington v. Oil Co., the defendants knowingly sold to one Chase, a retail dealer, to be sold by him to his customers as oil, naphtha, a dangerous and explosive liquid. Chase sold the naphtha as oil, the plaintiff used it in a lamp for illuminating purposes, it ignited and exploded, and he recovered of the wholesale dealer. Judge Gray, later Mr. Justice Gray of the Supreme Court, said:

"It is well settled that a man who delivers an article, which he knows to be dangerous or noxious, to another person, without notice of its nature and qualities, is liable for an injury which may reasonably be contemplated as likely to result, and which does in fact result, therefrom, to that person or any other, who is not himself in fault. Thus a person who delivers a carboy,

which he knows to contain nitric acid, to a carrier, without informing him of the nature of its contents, is liable for an injury occasioned by the leaking out of the acid upon another carrier, to whom it is delivered by the first in the ordinary course of business, to be carried to its destination. Farrant v. Barnes, 11 C. B. (N. S.) 553. So a chemist who sells a bottle of liquid, made up of ingredients known only to himself, representing it to be fit to be used for washing the hair, and knowing that it is to be used by the purchaser's wife, is liable for an injury occasioned to her by using it for washing her hair. George v. Skivington, Law Rep. 5 Ex. 1."

In Lewis v. Terry (Cal.) 43 Pac. 398, a dealer, knowing a folding bed to be defective and unsafe, sold it to a Mr. Apperson without informing him of the fact. His wife suffered a broken arm and other severe injuries from the negligence of the dealer in the sale of the bed, and recovered of him the damages she sustained.

The Supreme Court of Missouri, in Heizer v. Kingsland & Douglass Mfg. Co., in which they held that the manufacturer was not liable to a third person for negligence in the construction of the cylinder of a threshing machine, which burst and injured him, said:

"Had the defendant sold this machine to Ellis, knowing that the cylinder was defective, and for that reason dangerous, without informing him of the defect, then the defendant would be liable even to third persons not themselves in fault. Shearman & Redfield on Negligence (4th Ed.) § 117."

Turning now to the case in hand, it is no longer difficult to dispose of it. The allegations of the complaint are that the defendant prepared a covering for the cylinder of the threshing machine, which was customarily and necessarily used by those who operated it to walk upon, and which was so incapable of sustaining the least weight that it would bend and collapse whenever any one stepped upon it; that it concealed this defective and dangerous condition of the threshing rig so that it could not be readily discovered by persons engaged in operating or working upon it; that it knew that the machine was in this imminently dangerous condition when it shipped and supplied it to the employer of the plaintiff; and that the plaintiff has sustained serious injury through this defect in its construction. The case falls fairly within the third exception. It portrays a negligence imminently dangerous to the lives and limbs of those who should use the machine, a machine imminently dangerous to the lives and limbs of all who should undertake to operate it, a concealment of this dangerous condition, a knowledge of the defendant when it was shipped and supplied to the employer of the plaintiff that the rig was imminently dangerous to all who should use it for the purpose for which it was made and sold, and consequent damage to the plaintiff. It falls directly within the rule stated by Mr. Justice Gray that when one delivers an article, which he knows to be dangerous to another person, without notice of its nature and qualities, he is liable for an injury which may be reasonably contemplated as likely to result, and which does in fact result therefrom, to that person or to any other who is not himself in fault. The natural, probable, and inevitable result of the negligence portrayed by this complaint in delivering this machine when it was known to be in a condition so imminently dangerous to the lives and limbs of those who should undertake to use it for the purpose for which it was constructed was

the death, or loss of one or more of the limbs, of some of the operators. It is perhaps improbable that the defendant was possessed of the knowledge of the imminently dangerous character of this threshing machine when it delivered it, and that upon the trial of the case it will be found to fall under the general rule which has been announced in an earlier part of this opinion. But upon the facts alleged in this complaint, the act of delivering it to the purchaser with a knowledge and a concealment of its dangerous condition was so flagrant a disregard of the rule that one is bound to avoid any act imminently dangerous to the lives and health of his fellows that it forms the basis of a good cause of action in favor of any one who sustained injury therefrom.

The judgment of the Circuit Court must be reversed, and the cause must be remanded to the court below for further proceedings not inconsistent with the views expressed in this opinion.