## WOOD et al. v. SLOAN.

### SYLLABUS BY THE COURT.

1. The general rule is that where an independent contractor is employed to construct or install any given work or instrumentality, has constructed or installed same, the same has been received and accepted by the employer, and the contractor has been discharged, he is no longer liable to

third persons for injuries received as a result of defective construction or installation.

P. 133

2. To the general rule certain well-defined exceptions exist, and they may be divided into two general classes, viz.: (1) Those where the thing dealt with is imminently dangerous in kind; and (2) those where the thing dealt with is not imminently dangerous in kind, but is rendered dangerous by defect.

P. 133

3. In the first class of cases, of which the manufacture or sale of poisons, explosives, guns, etc., form an example, the law will not tolerate negligence. The duty to take care is a duty to the public, so that the lives and health of the people may not be jeopardized.

P. 133

4. In the second class of cases, the independent contractor, in order to be liable to third persons, not parties to the contract, must be shown to have had knowledge of the defect and its dangerous character when he put the same out.

P. 134

5. Knowledge of a defect and its dangerous character often evidences malice, deceit, or fraud, but neither malice, deceit, nor fraud on the part of the independent contractor are necessary to create liability to third persons, if, as a matter of fact, the independent contractor has knowledge of the defect and its dangerous character. If he has knowledge, he will be held to intend all the natural, usual, and probable consequences of his act.

P. 141

6. Actual knowledge of the defect and danger is not always required, but such knowledge may, under some circumstances, be inferred or imputed.

P. 141

7. Independent contractors are sometimes held liable to strangers to their contract upon the doctrine of implied invitation. That is to say, that where one undertakes with another to construct a place for the doing of certain work, such as a scaffold or stage, he may be liable to any one who is injured while using the place in the performance of such work.

P. 142

8. If an independent contractor manufactures an instrumentality defectively, and the defect renders the same dangerous, and he does not know of the defect and its dangerous character by reason of his failure to exercise due care, he is guilty simply of negligence. But if he knows of the defect and its dangerous character, and puts out the thing in deceit, fraud, malice, or perhaps other bad motives, he is not guilty of negligence at all. In such circumstances, the transaction leaves the field of negligence and passes into the domain of tort.

P. 144

Error to District Court, Santa Fé County; Abbott, Judge.

Action by J. H. Sloan against J. B. Wood and another, copartners doing business as the Wood-Davis Hardware Company. Judgment for plaintiff, and defendants bring error. Reversed and remanded, with directions to award new trial.

FRANCIS C. WILSON of Santa Fé, for plaintiffs in error.

Defendants were independent contractors who had completed and turned over their work to the owner, by whom it had been accepted, and therefore were not liable to third persons for injuries resulting from alleged defects in the work.

Thompson on Neg., 686, and cases cited; Whart. on Neg. (2nd Ed.), p. 439; Memphis A. & P. Co. v. Fleming, 132 S. W. (Ark.) 222; 23 A. & E. Ann., 709; Bos-

well v. Laird, 8 Cal. 469, 68 Amer. Dec. 345; Young v. Smith and K. Co., 124 Ga. 475, 110 Amer. St. R. 186; Richards v. O'Brien Bros., 1 Ga. App. 107, 57 S. E. 907; Field v. French, 80 Ill. App. 78; Daugherty v. Herzog, 44 N. E. (Ind.) 457, 32 L. R. A. 837; Neclser v. Harvey, 49 Mich. 517; Gorham v. Gross, 125 Mass. 240; Heizer v. Kingsland & D. Mfg. Co., 110 Mo. 605, 15 L. R. A. 821; Marvin Safe Co. v. Ward, 46 N. J. L. 19; Lossee v. Clute, 51 N. Y. 494, 10 Am. Reports, 638; Bailey v. Mayor, etc., of New York, 3 Hill. 531, 38 Amer. Dec. 669; First Presby. Church v. Smith, 163 Pa. 561, 26 L. R. A. 554; Curtin v. Somerset, 140 Pa. 12; Fitzmaurice v. Fabian, 147 Pa. 199; National Sav. Bk. v. Ward, 100 U. S. 195, 25 L. Ed. 621; Winterbottom v. Wright, 10 Mess. & Wels. 109; Colis v. Selden, L. R. 3C P. 495; Earl v. Lubbock, 1 K. B. 253; O'Brien v. The Amer. Bridge Co., 110 Minn. 364, 125 N. W. 122, 32 L. R. A. 980; Penn. Steel Co. v. Elmore & H. Con. Co., 175 Fed. 176; Casey v. Wrought Iron Eng. Co., 114 Mo. App. 47, 89 S. W. 330; Kahmer v. Odessee Elevator Co., 89 N. Y. S. 185.

RENEHAN & WRIGHT of Santa Fé, for defendant in error.

Notwithstanding that defendants were independent contractors and had turned over their work, they were liable under the proofs in this case. There are many modifications of the rule for which plaintiff in error contends. Where the work is a nuisance per se, or where it is turned over by the contractor in a manner so negligently defective as to be imminently dangerous to third persons the general rule does not apply.

Young v. Smith, etc., Co., 4 A. & E. Ann. Cas., 226 (Ga.), followed by case note in 32 L. R. A. (N. S.) 972; O'Brien v. Amer. Bridge Co., id., 980; Miner et al. v. McNamara, 21 L. R. A. (N. S.) 477 and case note; Kahner v. Otis Elevator Co., 89 N. Y. S. 185; Devlin v. Smith, 89 N. Y. 470, 42 A. R. 311; Bright v. Barnett & R. Co., 88 Wis. 299, 26 L. R. A. 524, 60 N. W. 418;

Wood v. Sloan, 20 N. M. 127

Casey v. Wrought Iron Bridge Co., 114 Mo. App. 47; Penn. Steel Co. v. Elmore & Hamilton Con. Co., 175 Fed. 176.

## OPINION OF THE COURT.

PARKER, J.—The defendant in error will be referred to as plaintiff, and the plaintiffs in error as defendants, as they were situated in the court below.

One Jennie Schaeffer was the owner of an office building in the city of Santa Fé, and had employed defendants to install a stationary washstand, and to connect the same with the waterworks system of the city, which was done, and the work accepted by the owner. During said time plaintiff was the tenant of the owner, and maintained his office for the practice of his profession of physician and surgeon in the room where the washstand was installed. In making such installation, it became necessary to remove a board from the floor extending out from rear to front of the washstand. This board was replaced, after the installation, in such a manner that, when plaintiff stepped upon it while attempting to procure a glass of water for a patient, it gave way and injured the plaintiff by allowing his foot and leg to go through the floor. The washstand was installed April 9, 1912, and the plaintiff used the same with safety until July 4, 1912, when the accident occurred. The washstand was installed close to the northwest corner of the room and plaintiff ordinarily approached the same from the south side, thus not stepping upon the board in question, at least not with his full weight. On the occasion of the accident he approached the washstand from the east or front of the same, and placed his whole weight upon the board, and it gave way under him. The defect in replacing the board consisted in failing to support the end, which extended out to the front of the washstand, with a cleat nailed to a joist, as was necessary to render it safe; the end of the board not reaching quite far enough to rest upon the joist. The case was tried to a jury and resulted in a verdict for plaintiff.

The theory upon which the case was submitted to the jury is stated. in instruction 8a, and is, to the effect that the defendants were independent contractors, as shown by the pleadings, and that the general rule of law is that they were not liable to third persons for injuries received, due to defective work after the same has been completed, turned over to and accepted by the owner, unless the work was so performed and in such a place as to constitute a nuisance per se, or so negligently defective as to be imminently. dangerous to third persons. In addition to the general verdict, the jury made special findings, among which are the following:

"Question No. 1. State whether you find that, at the time plaintiff fell through the floor, he approached the washstand in an unusual manner, and thereby imposed upon the board alleged to have given way an unusual and extraordinary weight. Answer to Question No. 1. No."

Question No. 2. State whether you find the board was replaced with sufficient firmness and security to permit its being used ordinarily without danger to a person of ordinary weight and such person using the same in an ordinary manner. Answer to Question No. 2. No."

"Question No. 3. State whether you find there was imminent danger resulting from the manner in which the board in the floor was replaced to any person of ordinary weight in approaching and using the basin and stepping upon the said board in a normal and ordinary way. Answer to Question No. 3. Yes."

"Question No. 5. State whether you find that the defendants knowingly, intentionally, willfully, maliciously, and fraudulently replaced the board so that the same could not sustain the weight of a person of ordinary weight stepping upon it. Answer to Question No. 5. No."

Defendant moved for a judgment non · obstante veredicto, which motion was denied, and judgment was rendered on the general verdict. The motion for judgment

non obstante was based upon the special finding No. 5, above set out.

It thus appears that defendants were independent contractors, completed their contract, turned over their work to the owner, and the same was accepted by her. They had no contractual relations with the plaintiff, and owed him no contractual duty. It further appears from the special findings that they did not "knowingly, intentionally, willfully, maliciously, and fraudulently" replace the board so that it would not sustain the weight of an ordinary person stepping upon it. This squarely raises the question of the liability of independent contractors to third persons after they have completed their work, and the same has been accepted by the owner.

[1] The general rule upon this subject may be stated as follows: Where an independent contractor is employed to construct or install any given work or instrumentality, has constructed or installed the same, the same has been received and accepted by the employer, and the contractor has been discharged, he is no longer liable to third persons for injuries received as a result of defective construction or installation. 2 Cooley on Torts (3d Ed.) p. 1486; 1 Thompson, Neg. (2d Ed.) § 686; 29 Cyc. 478; 16 A. & E. Ency. Law, 209.

[2] Certain exceptions to the general rule above stated exist, and they may be divided into two general classes, viz.: (1) Those where the thing dealt with is imminently dangerous in kind; and (2) those where the thing dealt with is not imminently dangerous in kind, but is rendered dangerous by defect.

[3] In the first class of cases the thing dealt with is so imminently dangerous in kind as to imperil the life or limb of any person who uses it. In such circumstances, the manufacturer owes a positive duty to every person into whose hands the thing shall lawfully come and be used in the ordinary manner in which it was intended for use. The liability arises out of the public duty to protect every one to whom the thing shall lawfully come for its intended use, against the certain disaster which must result if proper care is not used. The degree of care exer-

cised must be, at least, in proportion to the peril involved. 2 Cooley on Torts (3rd Ed.) p. 1488. Familiar examples of such things are poisonous drugs incorrectly labeled, patent medicines containing harmful ingredients, hair dressings which injure health, dangerous chemicals, unwholesome food, a defective gun, explosives, and the like. See Thomas v. Winchester, 6 N. Y. 397, 57 Am. Dec. 455, which is a leading case; Blood Balm Co. v. Cooper, 83 Ga. 457, 10 S. E. 118, 5 L. R. A. 612, 20 Am. St. Rep. 324; Bishop v. Weber, 139 Mass. 411, 1 N. E. 154, 52 Am. Rep. 715; Faro v. Remington Arms Co., 67 App. Div. 414, 73 N. Y. Supp. 788; 2 Cooley on Torts (3rd Ed.) p. 1488; 29 Cyc. 480.

In such cases, not only must the highest degree of care and skill be employed by the manufacturer or vendor, but the law will not tolerate the slightest negligence on his part. It is a necessary rule of law, so that the health and lives of the people may not be jeopardized. With this class of cases, however, we have nothing to do in this case; the instrumentality in question here not being inherently dangerous in kind.

[4] The floor board was rendered dangerous by reason of the defective method of replacing and supporting it. The jury found, specially, that the defect rendered it imminently dangerous to use the washstand in the regular and ordinary way.

In this class of cases, entirely different principles govern. In the first place, the defendant must know of the defect and its dangerous character. Under the proofs in this case, the defendants had no actual knowledge of the defect; the board having been replaced by their employé and servant. Their knowledge of the defect, if they are to be held to have any, must be imputed to them by reason of the act of the employé within the scope of his employment. That knowledge of the defect and the danger in such cases is necessary, see 29 Cyc. 482, 2 Cooley on Torts (3rd Ed.) p. 1489, 1 Shearman & Redfield on Negligence (6th Ed.) § 117, and the following cases:

In O'Neill v. James, 138 Mich. 567, 101 N. W. 828, 68 L. R. A. 342, 110 Am. St. Rep. 321, 5 Ann. Cas. 177,

a manufacturer of champagne cider sold the same to the
employer of the plaintiff, but was not shown to have had
knowledge that the bottle, which exploded, was improper-
ly charged with gas, and he was held not liable.    The
court said:

> "It will be observed that, where no contrac-
> tual relations exist, the doctrine is recognized
> that there must be knowledge of the dangerous
> character of the thing sold, before defendant can
> be held liable, and this doctrine is recognized in
> all the cases to which our attention has been
> called.  * * *  The plaintiff knew that cham-
> pagne cider, as ordinarily manufactured and
> sold, was charged with a gas.  As we have before
> stated, there is no proof from which the infer-
> ence might be drawn that defendant had knowl-
> edge that the bottle was improperly charged.  *
> *  * Under the facts disclosed by the record, a
> verdict should have been directed in favor of de-
> fendant."

The court refers to and quotes from Weiser v. Holz-
man, 33 Wash. 87, 73 Pac. 797, 99 Am. St. Rep. 932,
which was another case of an exploding champagne cider
bottle, and arose on demurrer to the complaint.    The
complaint alleged that the respondent manufactured, sold,
and delivered to one Pratt, under the name of champagne
cider, a dangerous explosive, knowing it to be such, with-
out warning Pratt of its dangerous character, and that
the defendants willfully, carelessly, and negligently manu-
factured and bottled the said champagne cider, and failed
to properly charge the said cider with the proper amount
of carbonic acid gas, and other substances used in manu-
facturing and bottling the same.    There was a direct
charge of knowledge on the part of the defendant in this
case, and the court held that the complaint stated a cause
of action for that reason, and for the further reason that
the champagne cider was alleged to be a dangerous ex-
plosive.    The court cited many cases.

It is to be noted that in the case from Michigan, supra,
the bottler of the cider was the only person who had

knowledge of the defect, if there was one,, and the court refused to impute such knowledge to the manufacturer, and held, in effect at least, that the knowledge must be actual knowledge before liability would arise.

In the Washington case, supra, as before seen, the question arose on demurrer, and the complaint alleged knowledge.

Slattery v. Colgate, 25 R. I. 220, 55 Atl. 639, arose on demurrer to the declaration, which failed to allege knowledge, on the part of defendant, of the excess of alkali in shaving soap put upon the market by it, and which injured the faces of plaintiff's customers at his barber shop, whereby he lost his business. The court said: '

> "The whole subject of the responsibility of a manufacturer to persons using his products, on account of defects therein, has been recently fully discussed by this court in McCaffrey v. Mossberg & Granville Mfg. Co., 23 R. I. 381, 50 Atl. 651, 91 Am. St. Rep. 637. We think the case can only be sustained if it can be brought within the second class referred to there (the article involved not being an inherently dangerous one, but one which may have become so by the acts or neglect of the manufacturer), in which case he is not liable unless he knows of the defect and practices deceit in exposing the defective product for sale. Alkali of some kind is a necessary ingredient of soap; and it is no deceit to include it in the manufacture of the article for the market. It is only the excess of alkali that can render the compound hurtful to the human skin. Unless the defendants knew of this excess, they cannot be held liable. It is not alleged that they had this knowledge, only that they were negligent."

In the former case of McCaffrey v. Mossberg, etc., Co., the plaintiff was in the employ of a manufacturing jeweler, and while engaged in operating a drop press, in which was a heavy weight held by a hook, the hook broke, and the weight fell upon his hand and injured it. The

Wood v. Sloan, 20 N. M. 127

defendant manufactured the machine and sold it to the employer of the plaintiff. The machine was negligently built and defective in this: That the hook was made of iron or steel of poor quality, and of insufficient size. The hook had been improperly welded, having cracks or crevices through the hook. The defendant knew, or had reason to know, and but for want of reasonable care would have known, that the machine, when it was sold, was a dangerous appliance. The defendant demurred to the declaration. The court, in passing upon the sufficiency of the declaration, divides the cases which form the exceptions to the general rule into three classes, as follows:

"(1) Where the thing causing the injury is of a noxious or dangerous kind; (2) where the defendant has been guilty of fraud or deceit in passing off the thing; (3) where the defendant has been negligent in some respect with reference to the sale or construction of a thing not imminently dangerous. The principle that governs the first class of cases is that one who deals with an imminently dangerous article owes a public duty to all to whom it may come, and whose lives may be endangered thereby, to exercise caution adequate to the peril involved * * * A similar principle governs the second class of cases, in which the degree of danger in the thing itself may be less, but where the seller actually knows of the danger in the article and puts it forth by some fraud or deceit. In such cases the breach of duty grows out of the fraud or deceit in the sale, and it extends to persons injured thereby, who may reasonably be deemed to be within the contemplation of the parties to the transaction. * * * The third class of cases relating to the sale of a thing not in its nature dangerous rests on the principle that as to such things there is no general or public duty, but only a duty which arises from contract, out of which no duty arises to strangers to the contract."

The court, after an exhaustive review of the cases, summarizes the doctrine as follows:

> "We think that the result of the cases on this subject clearly establishes the weight of authority in favor of the rule that where the cause of the injury is not in its nature imminently dangerous, where it does not depend upon fraud, concealment, or implied invitation, and where the plaintiff is not in privity of contract with the defendant, an action for negligence cannot be maintained."

In Marquardt v. Ball Engine Co., 122 Fed. 374, 58 C. C. A. 462, an opinion by Day, Circuit Judge, the same principle is applied to a case of injury by the breaking of a fly-wheel on an engine, by reason of the defective working of a valve. The court points out that there was an entire lack of proof that the makers knew or ought to have known that the use of such a valve was immediately or imminently dangerous to human life or safety, so as to make it a breach of duty owing to strangers to supply it to a customer who might use it in a business in which third persons would be employed.

In Zieman v. Kieckhefer Elevator Co., 90 Wis. 497, 63 N. W. 1021, the Supreme Court of that state applied the same doctrine to a defective elevator, which fell and injured an employé of the purchaser of the elevator, and, for the lack of proof of knowledge of the defect, denied relief to the plaintiff.

In Heizer v. Kingsland, etc., 110 Mo. 605, 19 S. W. 630, 15 L. R. A. 821, 33 Am. St. Rep. 482, the plaintiff brought an action for damages against the manufacturer of steam threshing machines, to recover damages for the death of her husband, who received injuries from which he died, while assisting in operating a machine sold by the defendant to another person. The injury was caused by the cylinder of the thresher flying into pieces, one of which struck the deceased above the eye and killed him. The petition stated that the defendant knew, when it constructed the machine, it would be used and operated by a number of persons in the employment of the person to

whom it should be sold; that the defendant warranted the same to be free from defects and of first-class material; that the cylinder was made of poor material, was defective in construction, and was too weak to stand the ordinary strain—all of which defects were known to the defendant's agents at the time of the sale. The court held the defendant not liable upon the ground that there was no evidence that it knew that the cylinder was defective, and for that reason dangerous. The case points out that where nothing more than negligence is shown, no right of action arises in favor of strangers to the contract.

The case of Schubert v. Clark, 49 Minn. 331, 51 N. W. 1103, 15 L. R. A. 818, 32 Am. St. Rep. 559, was a case of a defective step-ladder. The defect arose out of the use of poor, crossgrained, and decayed lumber, and the defendant knew that fact, and that the ladder was not of sufficient strength to stand the weight of a person using it. Neither the plaintiff nor any of the persons through whose hands the stepladder had passed from the manufacturer down to the user, the plaintiff, knew of the defect, and the same was concealed by the ladder being painted and varnished so that a person could not discover its defects. A demurrer was interposed to the complaint and overruled, and the defendant appealed, and the declaration was held to state a cause of action.

In Huset v. J. I. Case Threshing Machine Co., 120 Fed. 865, 57 C. C. A. 237, 61 L. R. A. 303, a review is made of the authorities and principles governing this class of cases, and Circuit Judge Sanborn points out clearly that knowledge of the defective and dangerous condition of the instrumentality must be present with the manufacturer when he puts the thing out, in order to create a liability on his part to third persons, in those cases where the instrumentality is not in and of itself inherently dangerous to human life.

In Tom v. Nichols-Fifield Shoe Machinery Co. (C. C. A.) 215 Fed. 881, plaintiff's employer purchased a die-cutting machine from defendant, to be set up and operated in his factory, and plaintiff, while operating the machine in the course of his duty, was injured by the fall of

a heavy head piece, due to a defect in the machine, or failure to properly adjust same when it was set up by defendant's employés. Defendant knew that it was an imminently dangerous instrumentality when it set it up, and not only concealed the defect, but gave the purchaser and his employés to understand that it was safe. The court cites the Huset case in 120 Fed. 865, 57 C. C. A. 237, 61 L. R. A. 303, and holds the defendant liable upon the ground of knowledge of the defect and its dangerous character.

In O'Brien v. American Bridge Co., 110 Minn. 364, 125 N. W. 1012, 32 L. R. A. (N. S.) 980, 136 Am. St. Rep. 503, the court, after an exhaustive review of the English and American cases, held the contractor liable to third parties, because the bridge was an imminently dangerous instrumentality by reason of defects in construction, and because the defendant had actual, at least imputed, knowledge of the defects and the dangers.

The same principles were applied in Pennsylvania Steel Co. v. Elmore & H. Contracting Co.. (C. C.) 175 Fed. 176, and in Casey v. Wrought Iron Bridge Co., 114 Mo. App. 47, 89 S. W. 330. These bridge cases might be well classified, it seems to us, as instrumentalities inherently dangerous in kind, in which case the law will not tolerate even plain negligence in the construction of the same to the damage of the members of the public. In fact they are so classified in Pennsylvania Steel Co. v. Elmore & H. Contracting Co. (C. C.) 175 Fed. 176, supra; the court saying:

> "In my judgment it is immaterial that the dangerous thing made and turned over for use by others known to the maker is a structure, such as piers for a bridge, instead of some article of commerce, such as naphtha, or a drug, or a chemical compound."

See, also, exhaustive notes to Woodward v. Miller, 119 Ga. 618, 46 S. E. 847, 64 L. R. A. 932, 100 Am. St. Rep. 188, and Thornton v. Dow, 60 Wash. 622, 111 Pac. 899, 32 L. R. A. (N. S.) 968.

[5] In this connection it is to be remarked that knowledge of a defect and its dangerous character often evidences malice, deceit, or fraud. If an independent contractor knowingly puts out an instrumentality so defectively constructed as to be a menace to life, or calculated to cause great bodily harm to any one who uses it, he must have some reason for so doing. He may have malice toward some person or persons who will probably use the instrumentality; or he may desire to cheat and defraud his employer to his own profit, as in the bridge case, where mud, instead of cement, was used. On the other hand, he may have neither of such bad motives. In either event, with or without bad motives, if he has knowledge of the defect, and its danger, he will be liable and will be held to intend all the natural, usual, and probable consequences of his act.

[6] Further in this connection we have said that knowledge of the defect and danger are required. We do not overlook the doctrine that negligence may be so gross and inexcusable as to show wanton disregard of the rights and interests of others. The defendant may not actually know of the defect and danger on account of his negligence, but that negligence may be so aggravated and outrageous, under the circumstances, as to show a willingness, if not an intent, to injure others. Hence we see the expressions "knew or ought to have known," "should have known," "must have known," and the like, in books. The cases are not always clear as to the principle upon which the doctrine rests. The doctrine is not involved in this case, and we do not deem it proper to discuss it or define its limit. It may be suggested, however, that the doctrine might rest upon the consideration that where the facts are such as to show that the defendant was so situated with reference to the instrumentality that the defect and its dangerous character must be apparent to him, if he would look, then knowledge may be imputed to him. In other words, such circumstances are evidence of knowledge, and in most cases they will amount to proof of the same.

The words "ought to have known" or "should have known" are more properly applicable to cases of negligence only, while "must have known" express more nearly and properly the idea we have been discussing. If the defendant must have known, he did know, in legal contemplation. In discussing this exception to the general rule, Judge Cooley says:

> "If the defendant knew of the defective construction, then the case falls within the exception last stated; but if the defendant ought to have known and did not, which is all that the complaint positively alleges, then it was a case of simple negligence, and the decision would seem to be at variance with the general rule." 2 Cooley on Torts (3rd Ed.) 1491.

[7] Another principle or doctrine is sometimes invoked to create liability to strangers on the part of an independent contractor, and it is what is mentioned as the doctrine of implied invitation. It is thus stated by Judge Cooley:

> "Another exception to the general rule which the authorities seem to establish is that where one undertakes with another to construct a place for the doing of certain work, such as a scaffold or staging, he will be liable to any who while using the place in the performance of such work, are injured by reason of negligence or defective construction. There is some difference of opinion as to the grounds of liability in these cases, but implied invitation is the prevailing one." 2 Cooley on Torts (3d Ed.) 1491.

For a fine discussion of this doctrine and of the cases in which it has been applied, see Bright v. Barnett & Record Co., 88 Wis. 299, 60 N. W. 418, 26 L. R. A. 524.

With this doctrine we have nothing to do in this case. There was no implied invitation here. The instrumentality was not specially prepared for a particular purpose, nor for any particular person. It was an ordinary plumbing job, negligently performed. If the plaintiff can re-

cover, then any other tenant of the owner of the building may do the same, now or at any time in the future.

There is a conflict of authority as to the applicability of the doctrine of implied invitation. Some of the cases and text-writers limit its application to the owner of buildings and structures upon his own premises which are negligently constructed so as to become imminently dangerous. See Huset v. J. I. Case, etc., Co., 120 Fed. 865, 57 C. C. A. 237, 61 L. R. A. 303. This limitation is denied in Pennsylvania Steel Co. v. Elmore & H. Co. (C. C.) 175 Fed. 176.

It is further to be observed that, where the contractor constructs a building or an instrumentality of the class here in question, it is doubtful whether the contractor could, in any event, be liable to third persons, after he has turned over the work to his employer. When the work is completed to the satisfaction of the owner and employer, he takes over the same and adopts the same as his own. Thereupon he assumes a duty, to those whom he invites to use the same, to take care that the thing is free from dangerous defects. If the owner knows, or by the exercise of reasonable care he could discover the defect, in such case, his negligence intervenes and cuts off the casual relation between the fault of the contractor and the injury. See Curtin v. Somerset, 140 Pa. 70, 21 Atl. 244, 12 L. R. A. 322, 23 Am. St. Rep. 220; Daugherty v. Herzog, 145 Ind. 255, 44 N. E. 457, 32 L. R. A. 837, 57 Am. St. Rep. 204; Presbyterian Congregation v. Smith, 163 Pa. 561, 30 Atl. 279; Miner v. McNamara, 81 Conn. 690, 72 Atl. 138, 21 L. R. A. (N. S.) 477.

In Presbyterian Congregation v. Smith, supra, it is said:

> "The Pennsylvania rule, deducible from all the the cases, is that if the employer, at the time he resumes possession of the work, from an independent contractor, knew, or ought to have known, or from a careful examination could have known, that there was any defect in the work, he is responsible for any injury caused to a third person by defective construction."

In Miner v. McNamara, supra, the owner received from the contractor a building which he knew to be structurally weak by reason of defects and leased it to a tenant. The tenant sued the contractors, and they were held not liable. The decision is based upon the doctrine that the intervention of the negligence of the owner cut off the casual relation between the negligence of the contractor and the injury of the plaintiff. It is to be remarked that in this case both the contractor and the owner knew that the building was structurally weak and dangerous.

[8] In this connection we wish to say that there seems to be much unnecessary obscurity in the cases, due, we believe, to a lack of discrimination between negligence and tort. If an independent contractor manufactures an instrumentality defectively, and the defect renders the same dangerous, and he does not know of the defect and its dangerous character, by reason of his failure to exercise due care, he is guilty simply of negligence. In such case he is liable only on his contract. But if he knows of the defect and its dangerous character, and puts out the thing, in deceit, fraud, malice, or perhaps other bad motive, he is not guilty of negligence at all. In such circumstances, the transaction leaves the field of negligence and passes into the domain of intentional tort. In such case, he may be liable to strangers to the contract for the usual, natural, and probable consequences of his act, provided no other conscious human agency intervenes and cuts off the casual relation between the tort and the injury.

Applying the doctrines and principles heretofore outlined to the facts in this case, it is clear that the defendants were not liable. They had no contractual relations with the plaintiff, and owed him no contractual duty. There is no evidence that they knew of the defect and its dangerous character. They were guilty simply of negligence. There is no implied invitation on their part to use a dangerous instrumentality. In such circumstances, the independent contractor is not to be held liable.

For the reasons stated, the judgment of the court below will be reversed, and the cause remanded, with instructions to award a new trial; and it is so ordered.

ROBERTS, C. J., and HANNA, J., concur.